United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 96-2365

PlaNet Productions, Inc.,      *
     *
        Plaintiff - Appellant,    *
     *   On appeal from the United States
     v.                 *   District Court for the Western
     *   District of Missouri.
Elizabeth Shank,           *
     *
        Defendant - Appellee.   *

_____

Submitted: January 15, 1997
Filed: July 15, 1997

_____

Before WOLLMAN and FLOYD R. GIBSON, Circuit Judges, and MONTGOMERY,[1] District Judge.

_____

FLOYD R. GIBSON, Circuit Judge.

In this case, appellant PlaNet Productions, Inc. ("PlaNet") brought claims against appellee Elizabeth Shank for breach of contract and unjust enrichment. The district court granted Shank's motion for summary judgment on both claims, and PlaNet now

_____

[1]The HONORABLE ANN D. MONTGOMERY, United States District Judge for the District of Minnesota, sitting by designation.

appeals. Because we conclude that the district court[2] correctly determined that PlaNet failed to present a genuine issue of material fact on either of its claims, we affirm the district court's grant of summary judgment.

## II.   BACKGROUND

Prior to December 31, 1993, Shank served as the vice president and secretary for PlaNet. She was also a shareholder and member of PlaNet's board of directors. PlaNet licensed thirty-second television commercials known as "E Patrol" videos, which were intended to inform children of ways to help the environment. Beginning in 1993, PlaNet focused its E Patrol marketing efforts toward gas and utility companies. Shank was primarily responsible for marketing to utilities in the western United States, including a division of Utilicorp called Missouri Public Service ("Mo. Pub.").

On December 31, 1993, Shank entered into an Agreement (the "Agreement") to sell her shares in PlaNet to Laura Lombardi, the only other shareholder of the company. Pursuant to the Agreement, Shank was able to continue marketing for PlaNet as an independent contractor. Paragraph 5 of the Agreement provided:

> 5.      In exchange for and in reliance upon Ms. Shank's future work in marketing E Patrol, PlaNet agrees to:
> (a)  Pay Ms. Shank an amount equal to seventy-five percent (75%) of the gross receipts of any contract for licensing of E-Patrol Vignettes with [Mo. Pub.], KCP&L and/or Gas Service Company that is entered into within six (6) months of the date of this Agreement. Ms. Shank will serve as a primary liaison in servicing any of these accounts. PlaNet will also pay Ms. Shank 75% of the gross receipts from any renewals of such contracts with [Mo. Pub.], KCP&L, and/or Gas Service Company. Payment will

---

[2]The HONORABLE SCOTT O. WRIGHT, Senior United States District Judge for the Western District of Missouri.

be made to Ms. Shank on or before thirty (30) days following receipt by PlaNet of the payment.

(b) Should such a contract be entered into with [Mo. Pub.], KCP&L, or Gas Service on or before June 30, 1994, PlaNet will pay to Ms. Shank an amount equal to twenty percent (20%) of the gross receipts of any E Patrol licensing to the list of utilities set forth on Exhibit D attached hereto and incorporated herein by this reference within two years of the date of Closing.

(c) PlaNet will pay Ms. Shank an amount equal to thirty-three percent (33%) of the gross receipts of any Earth Minute license agreements to broadcast, cable, utilities or other sponsors, purchasers or licensees for a period of two years from the date of Closing. The forgoing [sic] payments shall not include a percentage of any amounts received by PlaNet for merchandising utilizing the Earth Minute name or logos.

PlaNet's App. at 20-21.

After the parties entered into the Agreement, Shank engaged in some marketing work on behalf of PlaNet, which was directly targeted at Mo. Pub. Specifically, Shank made phone calls to Nancy Cummings, Mo. Pub.'s Director of Communications. On March 23, 1994, Mo. Pub. entered into an E Patrol License Agreement with PlaNet. In an affidavit submitted to the district court, Cummings stated that Mo. Pub. entered into the license agreement as a direct result of Shank's marketing efforts. However, Lombardi claims that she made a phone call to Cummings on PlaNet's behalf, and at the conclusion of the phone call, Cummings told her that Mo. Pub. would enter into a license agreement with PlaNet. In exchange for the E Patrol license, Mo. Pub. paid PlaNet $22,000. Pursuant to Shank's Agreement with PlaNet, she received seventy-five percent of the Mo. Pub. licensing fee, which amounted to $16,500. Shank has also received additional compensation in accordance with the Agreement. In total, PlaNet has paid Shank approximately $60,000 since she sold her ownership in the company.

PlaNet filed a complaint alleging that Shank breached her Agreement with PlaNet by failing to provide the required marketing efforts and that Shank should therefore refund the money PlaNet paid her.  Alternatively, PlaNet claimed that the payments provided to Shank amounted to unjust enrichment.  The district court granted summary judgment in favor of Shank.  PlaNet appeals.

## II.    DISCUSSION

"We review the district court's grant of summary judgment <u>de novo</u>."  <u>Davidson & Schaaff, Inc. v. Liberty Nat'l Fire Ins. Co.</u>, 69 F.3d 868, 870 (8th Cir. 1995).  We will affirm the district court if "the evidence, viewed in the light most favorable to the non-moving  party, shows that no dispute of material fact exists and that the moving party is entitled to judgment as a matter of law."  <u>Id.</u>  Because this is a diversity case, we review the district court's interpretation of Missouri law <u>de novo</u>.  <u>See</u> <u>id.</u>

PlaNet's breach of contract claim largely hinges upon its contention that the Agreement contains ambiguous language.  PlaNet contends that the term "future work in marketing" is ambiguous, and therefore the court should have looked to parol evidence, including the past practices of the parties, to determine what the term means.  PlaNet then argues that a reasonable person could conclude that the term means "reasonable future marketing, consistent with past practice."   PlaNet's Br. at 15.  Therefore, because Shank's post-Agreement marketing efforts were substantially less extensive than her past marketing efforts, she breached the Agreement by providing inadequate marketing efforts.

We do not agree with PlaNet's contention that the term "future work in marketing" is ambiguous. Under Missouri law, "[a] contract is ambiguous only if its terms are susceptible to more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms."  <u>Angoff v. Mersman</u>, 917 S.W.2d 207, 210 (Mo. Ct. App. 1996).  However, "[a] contract is not ambiguous merely

because the parties disagree over its meaning." Jake C. Byers, Inc. v. J.B.C. Invs., 834 S.W.2d 806, 816 (Mo. Ct. App. 1992). "To determine whether a contract is ambiguous, we consider the whole instrument and give the words in the contract their natural and ordinary meaning." Id. While parol evidence may be used to clarify an ambiguous contract, see id. at 817, "[a] party cannot use parol evidence to create an ambiguity or to show that an obligation is other than that expressed in the written instrument," Angoff, 917 S.W.2d at 211.

We agree with the district court's conclusion that the Agreement was unambiguous. The Agreement provided that in exchange for Shank's "future work in marketing E Patrol," Shank would receive a portion of the proceeds of any contract entered into between Mo. Pub. and PlaNet. Shank undoubtedly performed some marketing work for PlaNet after the effective date of the Agreement and before Mo. Pub. signed a licensing agreement with PlaNet. The Agreement did not specify that Shank's future marketing had to be consistent with her past practices, and parol evidence "cannot cause the court to read into the contract something which it does not say." Craig v. Jo B. Gardner, Inc., 586 S.W.2d 316, 324 (Mo. 1979). Furthermore, the goal of Shank's marketing effort was to help PlaNet enter into a license agreement with one of the utilities. Mo. Pub.'s Director of Communications stated in her affidavit that Mo. Pub. entered into the license agreement as a direct result of Shank's marketing efforts.[3] As the district court correctly reasoned, if only a moderate marketing effort

---

[3]PlaNet asserts that a genuine issue of material facts exists as to whether Mo. Pub. entered into a license agreement with PlaNet as a result of Shank's marketing efforts. In her affidavit, Laura Lombardi stated that she made a phone call to Cummings on February 3, 1994, at the end of which Cummings informed her that Mo. Pub. would enter into a license agreement with PlaNet. However, assuming, as we must, Davidson & Schaaff, 69 F.3d at 870, that Lombardi's claim is true, her affidavit does not prove that Mo. Pub.'s decision to enter into the license agreement was based on Lombardi's phone call rather than Shank's marketing work. Lombardi's affidavit left open the possibility that Mo. Pub. had already determined to enter into an agreement with PlaNet based on Shank's marketing efforts. Cummings's affidavit established that

was required to persuade Mo. Pub. to enter into a license agreement, Shank was not required to do any more than that under the terms of the Agreement.

Additionally, parol evidence cannot be used to "modify or contradict the unambiguous terms of a written contract purporting to incorporate the whole agreement between the parties." South Side Plumbing Co. v. Tigges, 525 S.W.2d 583, 588 (Mo. Ct. App. 1975). The Agreement between Shank and PlaNet contained an integration clause,[4] which is a strong indication that the parties intended for the Agreement to be complete and final. See Byers, 834 S.W.2d at 813. We conclude that the Agreement was complete and unambiguous and that under the terms of the Agreement, Shank's marketing efforts were acceptable.

PlaNet also argues that the only consideration provided in exchange for Shank's payment was her past service to PlaNet, and because past services cannot constitute consideration, the contract was not valid. However, because PlaNet raised this

---

this was, in fact, the case. Furthermore, between the time Lombardi spoke with Cummings and Mo. Pub. entered into the license agreement, Shank had additional contacts with Cummings in furtherance of obtaining the agreement with Mo. Pub. In light of the overwhelming evidence that Shank's efforts resulted in the Mo. Pub. license agreement, Lombardi's self-serving affidavit is not sufficient to create a genuine issue of material fact.

[4]The integration clause provided:

> 15. This Agreement, including all Exhibits hereto, constitute[s] the entire agreement between Ms. Shank and PlaNet. The undersigned shall not be bound by any prior communication between or among them concerning the subject matter of this Agreement. The undersigned hereby expressly deny any reliance upon said communications. Any prior agreement between Ms. Shank and PlaNet is voided by the execution of this Agreement.

PlaNet's App. at 26-27.

argument for the first time in its Reply Brief, we will not consider it.  See Myre v. Iowa, 53 F.3d 199, 201 (8th Cir. 1995).

Finally, PlaNet claims that the payments to Shank resulted in unjust enrichment. Under Missouri law, a plaintiff is entitled to restitution for unjust enrichment when (1) the defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it would be unjust to allow the defendant to retain the benefit.  See Ticor Title Ins. Co. v. Mundelius, 887 S.W.2d 726, 727 (Mo. Ct. App. 1994).  In this case, it is not unjust to allow Shank to keep the compensation because she has received only that to which she was entitled under the Agreement.

## III.   CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.