United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2302SI

_____

Cheri L. Bush,                           *
                                         *
            Appellant,                   *
                                         *    On Appeal from the United
      v.                                 *    States District Court
                                         *    for the Southern District
                                         *    of Iowa.
Marshalltown Medical and                 *
Surgical Center,                         *
                                         *
            Appellee.                    *

_____

Submitted: June 11, 1997
    Filed:   September 9, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, BOWMAN and MORRIS SHEPPARD
     ARNOLD, Circuit Judges.

_____

RICHARD S. ARNOLD, Chief Judge.

        Cheri Bush brought this case against her employer, Marshalltown Medical and
Surgical Center, for sexual harassment and retaliation.  Her claims were based both on
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1988), and the
parallel Iowa statute, Iowa Code § 216.6 (1995).

        The Title VII claims of sexual harassment and retaliation were tried to a jury.
The jury returned a verdict for the defendant, finding specially that the defendant did

not subject Bush to actionable sexual harassment, and that it did not retaliate against her on account of her opposition to sexual harassment. Bush's motions for new trial and judgment notwithstanding the verdict were denied. Because Iowa law provides that claims under the state civil-rights statute are to be tried to the court, rather than a jury, the District Court[1] treated the jury's verdict as advisory only with respect to the supplemental state-law claims. As to these claims, the Court made its own specific findings of fact and conclusions of law, reaching essentially the same conclusions as the jury. The Court found, among other things, that witnesses for the defense were more credible than the plaintiff.

On appeal, Bush does not argue that the denial of her motion notwithstanding the verdict was error. That is, she does not argue that there was insufficient evidence, as a matter of law, to justify the conclusions that the jury reached on her Title VII claim. She does contend, however, that it was an abuse of discretion for the District Court to deny her motion for a new trial. She also contends that the findings of the District Court on the state-law claim are clearly erroneous.[2]

---

[1]The Hon. Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa.

[2]A couple of comments may be in order with respect to the procedure followed in this case. First, the fact that Iowa law provides that claims under that state's civil-rights statute are to be tried to the Court, rather than to a jury, is not relevant when the action is filed in federal court. The right to trial by jury in the federal forum is governed by the Seventh Amendment, not state law. We have recently held that actions under Minnesota's civil-rights statute, when filed in a federal district court, are triable as of right to a jury, even though the Minnesota statute itself provides that all actions brought pursuant to it must be tried to the Court. See Kampa v. White Consolidated Industries, Inc., 115 F.3d 585, 586 (8th Cir. 1997). Secondly, even if the state-law claim had been properly triable to the Court, the jury's findings on the Title VII claim, involving as they did factual issues common to both claims, should have concluded the matter. See Sisco v. J.S. Alberici Construction Co., 655 F.2d 146, 151 (8th Cir. 1981).

However, the plaintiff does not claim on appeal that it was error not to try the

We hold that the findings of fact made by the District Court are not clearly erroneous, and that it did not abuse its discretion in denying the motion for a new trial on the Title VII claim. We therefore affirm the judgment in all respects.

I.

Bush has been employed as a part-time paramedic by the defendant in its ambulance department since 1989. She has also worked as a dispatcher. In her part-time position, Bush is scheduled to work one day a week. Bush claims that when she started working she found sexually suggestive cartoons posted in the office. She did not, however, complain about these cartoons to her supervisor, Marsha Holm. Instead, most of Bush's complaints have involved a co-employee, Randall Bonnett, who is also a part-time paramedic, although on a different shift.

The defendant claims that Bush lodged her first complaints regarding inappropriate behavior during a 1991 ambulance squad meeting.[3] Holm called this meeting after discovering a list of "dumb blonde jokes" in the department in order to discuss the inappropriateness of those jokes and to inform the employees of their right to complain about behavior they found offensive, so that the hospital could remedy that behavior. During that meeting Bush told Holm that "a long time ago" Bonnett had called her a filthy name, but Holm had done nothing about it. Holm could not recall Bush's having reported the incident in the past but immediately discussed Bush's claims with Bonnett. Bonnett admitted having a disagreement with Bush but denied calling her any names. Holm did not discipline Bonnett because she could not prove that he

_____

state-law claim to the jury, nor does the defendant claim on appeal that it was error for the District Court to make its own findings of fact on the state-law claim, instead of treating the jury verdict as binding. Thus, we need not pursue these matters further.

[3]Bush claims she reported Bonnett's offensive behavior to Holm earlier in 1989 or 1990 and was told by Holm that she would talk to Bonnett.

made the statement. Holm did warn Bonnett, however, that if such behavior had occurred, it was not to happen again.

Holm did not receive any further complaints regarding inappropriate behavior until eight months later, in April 1992, when Bush called Holm and complained about statements Bonnett allegedly made to a male co-worker. Bush also stated Bonnett was getting away with too many "things" and eventually alleged five specific incidents of misconduct by Bonnett. Holm had not previously heard of any of these incidents. Holm investigated the matter and then met with her supervisor, Robert Downey, and the personnel manager, Bill Bumgarner, to discuss what discipline they should impose. They decided to fire Bonnett. Bonnett challenged this decision and either denied the allegations or explained his actions to Bumgarner. Concerned that the hospital had discharged Bonnett on the basis of inaccurate and unsubstantiated allegations, Bumgarner, Holm, and Downey decided the accusations warranted a two-day suspension without pay instead. Shortly after this, Bush and her husband met with Holm to reiterate their concerns about what they considered sexual harassment.

Partly in response to this meeting and to the suspension of Bonnett, Holm arranged for a sexual-harassment seminar to be given on May 12, 1992, by an assistant police chief who had experience in educating employees about sexual harassment in the workplace. After this presentation, Bumgarner and Downey reviewed the defendant's sexual-harassment policy and reiterated the defendant's commitment to a work environment free of sexual harassment and discrimination. Bush did not attend this seminar.

The next complaint lodged by Bush came in August 1992 and concerned a report that Bonnett had forwarded to a doctor at the hospital. In this report there was an account of a medication error made by Bush during an ambulance call. After speaking with Holm, Bush met with Downey and told him that Bonnett had forwarded the report to get her in trouble and that she wanted him fired. Downey investigated this incident

and decided not to take any formal disciplinary action against Bonnett, because the doctor was not concerned about the medication error, and Bush had not been harmed by Bonnett's action. Downey did, however, tell Holm to warn Bonnett that his behavior must improve and that any future substantiated acts of retaliation or sexual harassment would result in his immediate discharge. Downey also personally contacted Bonnett and told him that his conduct must improve. Downey provided Bush with a written response documenting his investigation and explaining his evaluation of the situation.

In early January 1993, Bush met with Downey and reported that Bonnett had used inappropriate language in a conversation with a female co-worker and again demanded that Bonnett be fired. Bush also claimed that all the women in the ambulance department had low morale due to the hostile environment. Based on Bush's claims, Downey decided that he and Wendy Kadner, a supervisor in defendant's personnel department, would interview all of the women in the ambulance department. They also interviewed the men. Neither Downey nor Kadner mentioned Bush or Bonnett during these interviews, but their colleagues discussed them at length and attributed the tension in the workplace to their personality conflict. None of the employees complained of being subjected to a sexually hostile or abusive work environment. Downey, Kadner, and Bumgarner reviewed the investigation results and concluded the hospital did not have a sexually hostile work environment, and that morale of women employees was not low. Downey informed Bush, both personally and in writing, of the results of the investigation. Bush then filed this complaint against the defendant.

At the end of February 1993, Bush complained to Downey that Bonnett was retaliating against her because of her civil-rights suit. She also claimed, without substantiation, that she had received threatening notes at work and harassing phone calls at home. In response to her complaint, Downey distributed a memo to all ambulance and dispatch personnel reminding them of the defendant's position concerning sexual harassment and informing them that they could not retaliate against

-5-

Bush. A week later the defendant enclosed with the employees' paychecks a copy of the hospital's sexual-harassment policy and a memo from the defendant's president reiterating its position against discrimination and harassment.

Bush also complained of retaliation in the dispatch department. She complained to the dispatch supervisor that a female co-worker threw a chair at her. After investigating the incident, the supervisor found that the co-worker had shoved a chair in Bush's direction. He told the co-worker that she needed to do a better job of controlling her temper. Bush requested a leave of absence from the dispatch department, which was granted. The supervisor wrote three letters to Bush requesting specific information regarding the alleged retaliation. Bush did not respond to his first two letters, so he spoke with her personally in March 1995. The only incident Bush mentioned was the previously reported chair incident.

Finally, Bush claimed that other employees retaliated against her by not scheduling her for as many hours as they had before she filed suit. Holm and Bush's co-workers denied these allegations, and stated instead that they had tried to schedule her on several occasions, but she was either unavailable or unwilling to work.

II.

A district court's findings cannot be set aside on appeal unless they are clearly erroneous. Fed. R. Civ. P. 52(a); Craft v. Metromedia, Inc., 766 F.2d 1205, 1211 (8th Cir. 1985), cert. denied, 475 U.S. 1058 (1986). A finding is clearly erroneous when our review of the record leaves us with the definite and firm conviction that a mistake has been made. Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985); Craft v. Metromedia, Inc., 766 F.2d at 1211-12. The party seeking to have the findings set aside bears the burden of showing clear error. Griffin v. City of Omaha, 785 F.2d 620, 626 (8th Cir. 1986). Finally, when reviewing for clear error we must view the evidence in the light most favorable to the party who prevailed at trial. Id.

In this case both the District Judge and the jury found for defendant after hearing seven days of testimony from over 34 witnesses and after reviewing nearly 200 exhibits.[4] Most of the testimony Bush gave regarding the incidents of sexual harassment were directly contradicted by Bonnett and her other co-workers. Both the jury and the District Judge resolved these discrepancies in the defendant's favor. The credibility determinations of the district judge must be given great deference and cannot be reversed absent compelling evidence to the contrary. Hornsby v. St. Louis Southwestern Ry. Co., 963 F.2d 1130, 1133 (8th Cir.), cert. denied, 506 U.S. 955 (1992). A finding based on the trial court's decision to believe one of two or more live witnesses can virtually never be clear error. For similar reasons, it was not an abuse of discretion to deny the motion for a new trial on the federal claims.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]Bush argues that Chief Judge Wolle abused his discretion by failing to admit certain cartoons into evidence. We do not agree. Chief Judge Wolle refused to admit only those cartoons that could not be identified by date. Of those that could be identified by date, he admitted every joke or cartoon Bush claimed to have seen in the workplace. He also admitted some cartoons that pre-dated Bush's employment. We believe that the 22 cartoons received into evidence provided the Court and jury with ample evidence to decide whether a sexually hostile environment existed in the defendant's workplace.