# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-2286

_____

Vivian Ann Rogers,

        Plaintiff - Appellant,

    v.

City of Little Rock, Arkansas; Vincent
Morgan, Little Rock, Arkansas Police
Officer, Individually and in His Official
Capacity; Louis Caudell, Little Rock,
Arkansas Police Chief, Individually and
in His Official Capacity,

        Defendants - Appellees.

_____

No. 97-2556

_____

Vivian Ann Rogers,

        Plaintiff - Appellee,

    v.

City of Little Rock, Arkansas,

        Defendant,

Appeals from the United States
District Court for the Eastern District
of Arkansas.

|                                                                         |     |
| ----------------------------------------------------------------------- | --- |
|                                                                         | *   |
| Vincent Morgan, Little Rock, Arkansas                                   | *   |
| Police Officer, Individually and in His                                 | *   |
| Official Capacity,                                                      | *   |
|                                                                         | *   |
|                                                                         | *   |
| Defendant - Appellant,                                                  | *   |
|                                                                         | *   |
|                                                                         | *   |
| Louis Caudell, Little Rock, Arkansas                                    | *   |
| Police Chief, Individually and in His                                   | *   |
| Official Capacity,                                                      | *   |
|                                                                         | *   |
|                                                                         | *   |
| Defendant.                                                              | *   |
|                                                                         | *   |

_____

Submitted: January 16, 1998
Filed: August 10, 1998
_____

Before LOKEN and MURPHY, Circuit Judges, and WEBBER,[1] District Judge.
_____

MURPHY, Circuit Judge.

Vivian Ann Rogers brought this action under 42 U.S.C. § 1983 against former Little Rock police officer Vincent Morgan, the City of Little Rock, and Chief of Police Louie C. Caudell, alleging that her constitutional rights were violated when Morgan raped her while he was on duty. After a bench trial the district court[2] found Morgan liable in his individual capacity and awarded Rogers $100,000 in damages. The court

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

had previously dismissed the claims against the city, Caudell, and Morgan in his official capacity. Rogers now challenges these dismissals, and Morgan appeals from the judgment entered against him. We affirm.

## I

Little Rock police officer Vincent Morgan stopped Rogers for a broken tail light on August 27, 1994, and asked her for proof she carried automobile insurance. She indicated that she did not have the necessary papers with her, and Morgan called for a tow truck which was standard procedure in such a situation. He later decided to cancel the tow, however, and he followed her home in his patrol car and went into her house. Rogers was unable to locate the papers, and Morgan told her he would let her off but that she owed him one. He then started touching and kissing her and led her into the bedroom where he told her to take off her clothes. Although she began to undress, she stopped when Morgan said she did not have to have sex with him. When he nevertheless repeated his demand that she disrobe, Rogers finished removing her clothes. Morgan then pushed her onto the bed and had sexual intercourse with her. Rogers said that she yelled because it hurt, but Morgan told her to be quiet and covered the microphone on his uniform.

Rogers testified that she was in shock and afraid during this encounter and that she did not know what to do, that she was surprised a police officer would be acting in such a way, and that she was intimidated by Morgan's gun and badge. The events took place during Morgan's duty shift when he was wearing his uniform, gun, and badge. He drove to Rogers' home in his patrol car and remained fully dressed in his uniform throughout. Rogers said she was afraid to show how upset she was at the time, but after Morgan left she vomited and called her former husband. He testified that she was upset and cried during the call. Her cousin took her to the hospital when she learned what had happened.

Rogers later sued the city and Morgan and the police chief in both their individual and official capacities. She alleged that she had been deprived of her constitutional rights under color of state law because Morgan used his office to coerce and intimidate her into nonconsensual sex. She also alleged that the department's policy of not sustaining citizen complaints without corroborating evidence created a permissive climate for abusive behavior. Finally, she alleged that the chief failed to take appropriate measures in response to prior sexual misconduct by Morgan and constitutional violations by other officers.

The district court granted summary judgment for the city and Chief Caudell in all respects, and for Morgan in his official capacity. The court held there was insufficient evidence to create a genuine issue of material fact about whether there was a policy or custom of failing to investigate or act on allegations of abuse by police officers and whether there was evidence that the chief handled prior incidents improperly or ignored complaints. Morgan's motion for summary judgment in his individual capacity was denied on the basis that a genuine issue of material fact remained about whether the sex was consensual.

Both Rogers and Morgan testified at trial, and the court found Rogers the more credible witness, accepted her version of the encounter, and made findings that Rogers was afraid of Morgan and what might happen if she didn't cooperate with a police officer and that he coerced her into sexual intercourse. The court also made specific findings leading to its conclusion that Morgan was acting under color of state law at the time. The court concluded that Morgan was liable under §1983 because he had violated Rogers' due process right to be free from physical abuse. It rejected Morgan's defense of qualified immunity because it concluded that he would have known that his actions were clearly contrary to law. It upheld Rogers' state law claim of assault and battery but dismissed her claim of intentional infliction of emotional distress. The court also found that Rogers was damaged in the amount of $100,000 for emotional distress and physical pain caused by Morgan's acts.

Morgan argues on appeal that Rogers failed to establish that he violated her due process rights since the evidence at trial showed the sex was consensual. He contends that he was not acting under color of state law because his actions were a substantial departure from the duties of his job and that the damage award was excessive. Rogers responds that the evidence supports the finding that Morgan intimidated and coerced her into having sex with him and that he did so under color of state law. She also contends that the resulting harm she suffered justifies the damage award.

Rogers appeals from the grant of summary judgment to the city and the police chief and to Morgan in his official capacity. She argues that she presented sufficient evidence to show that the city had a policy of disregarding complaints by citizens against police officers when the only evidence was the complainant's word against that of an officer, as well as failing to take effective remedial action for abuse.[3] In support she cites deposition evidence from department officials and unsustained complaints by female police officers of sexual harassment. The city, arguing on behalf of itself and the police, responds that Rogers has not produced evidence that the city had such a policy or that the chief was deliberately indifferent to or tacitly authorized constitutional violations. Morgan presents a similar argument.

## II

A number of issues are raised in connection with Morgan's appeal from the judgment entered against him after trial.

---

[3]Rogers claims for the first time in her reply brief that the alleged policy had a disparate impact on women, suggesting an equal protection violation. Claims raised for the first time in reply briefs will not be considered, see Planet Productions, Inc. v. Shank, 119 F.3d 729, 732 (8th Cir. 1997), but this claim would fail anyway because it was not adequately developed and Rogers neither submitted evidence to show that the policy was facially discriminatory nor alleged that it had a discriminatory purpose. See Keevan v. Smith, 100 F.3d 644, 650-51 (8th Cir. 1996).

## A

The first question is whether the district court was correct to analyze the case under the due process clause. In her complaint Rogers alleged that her rights under the fourth, fifth, sixth, eighth, and fourteenth amendments were violated, and it was left to the district court to consider which of these amendments should be the proper focus of analysis. In its consideration the court made reference to Graham v. Connor, 490 U.S. 386, 395 (1989), and reasoned that the facts here do "not fit the mold of a typical fourth amendment search and seizure case" and that no amount of force could have been reasonable to achieve Morgan's purpose in having nonconsensual intercourse. His acts were of a nature shocking to the conscience the court said, citing Rochin v. California, 342 U.S. 165 (1952), and the forced act of sexual intercourse violated Rogers' due process right to be free from physical abuse or sexual assault by state actors.

The Supreme Court has recognized a substantive due process right to bodily integrity in Rochin and a line of other cases, even when declining to apply it to particular fact situations. See e.g. Washington v. Glucksberg, 117 S.Ct. 2258, 2267 (1997) (no due process right to assisted suicide); Cruzan v. Director, Missouri Dep't of Health, 497 U.S. 261, 287-88 (1990) (O'Connor, J., concurring) (no absolute due process right to terminate life support of an incompetent). "It is settled now that the constitution places limits on the State's right to interfere with a person's most basic decisions about bodily integrity." Glucksberg, 117 S.Ct. at 2288-89 (Souter, J., concurring) (quoting Planned Parenthood v. Casey, 505 U.S. 833, 849 (1992)). The right has been employed to protect against nonconsensual intrusion into one's body, see Rochin, and has been seen to permit the right of a competent person to refuse unwanted medical treatment, see Cruzan, 497 U.S. at 278-79; 287-88; Vacco v. Quill, 117 S.Ct. 2293, 2301 (1997) (discussing Cruzan). The Supreme Court has not had occasion to consider the liability of a state actor under § 1983 for a sexual assault, but it has held that it is not necessary for there to be a precedent applying the constitutional right to

a "fundamentally similar" factual situation in order for a criminal defendant to know that he is violating the due process right to bodily integrity by committing sexual assault. United States v. Lanier, 117 S.Ct. 1219, 1226-28 (1997).

A number of circuit courts have found due process violations when state actors have inflicted sexual abuse on individuals. In another case involving rape by a police officer after a traffic stop, the Fourth Circuit described the due process right which was violated as a "right . . . not to be subjected by anyone acting under color of state law to the wanton infliction of physical harm." Jones v. Wellham, 104 F.3d 620, 628 (4th Cir. 1997). The same circuit also described this due process right as "protection against unreasonable bodily intrusions by state actors" in discussing a claim based on abusive sexual conduct in a state facility. McWilliams v. Fairfax County Bd. of Supervisors, 72 F.3d 1191, 1197 (4th Cir.), cert. denied, 117 S.Ct. 72 (1996). In a 1994 case involving sexual abuse of school children by a teacher the Fifth Circuit held that there was a well-established "liberty interest in . . . bodily integrity," Doe v. Taylor Ind. Sch. Dist., 15 F.3d 443, 450-52 (5th Cir. 1994), and in 1992 the Ninth Circuit spoke of a clearly established "right to bodily privacy" in Sepulveda v. Ramirez, 967 F.2d 1413, 1415-16 (9th Cir. 1992) (parolee observed while suppling a urine sample). Our circuit has also applied due process analysis to violation by a state actor of an individual's bodily integrity. In Haberthur v. City of Raymore, Missouri, 119 F.3d 720, 723 (8th Cir. 1997), we recognized the due process right to be free of unwelcome "sexual fondling and touching or other egregious sexual contact" by a police officer acting under color of law and reversed a dismissal on the pleadings.

Morgan's sexual assault of Rogers was a violation of the most intimate kind of bodily integrity. He forced himself into her body at a time and in a way that could not be considered part of any legitimate police function. The act was not only an invasion of Rogers' privacy, but of the most private area of her body. The facts of this case are very similar to those in Jones where an officer stopped the plaintiff on suspicion of driving while intoxicated, told her she would not be arrested and offered to drive her

home, but then raped her, and where the Fourth Circuit held that the violation of the plaintiff's bodily integrity invaded her due process rights. See 104 F.3d at 628. The district court did not err in concluding that Rogers' due process right was violated by the egregious sexual violation by officer Morgan.

The dissent argues that the facts in this case should be analyzed under the fourth amendment rather than due process, relying on Graham v. Connor, 490 U.S. at 395. Graham was a case involving force used at the scene of a traffic stop, and the Supreme Court said there that a fourth amendment reasonableness test should be applied to "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure.'" Id. Graham did not say that all claims of abuse by police officers are to be judged by that test, and the Court has advised that the case did "not hold that all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendment." Lanier, 117 S.Ct. at 1227 n.7.

The first step in a § 1983 analysis is "to isolate the precise constitutional violation" which is alleged. Baker v. McCollan, 443 U.S. 137, 140 (1979), cited in Graham, 490 U.S. at 394. Rogers has not charged Morgan with using excessive force. Her allegation is one of rape accomplished through the coercive power of his status as a police officer. This case is not about excessive force, but rather about nonconsensual violation of intimate bodily integrity which is protected by substantive due process. No degree of sexual assault by a police officer acting under color of law could ever be proper. The violation here is different in nature from one that can be analyzed under the fourth amendment reasonableness standard. Morgan's assault on Rogers was also different in time and place from the type of search and seizure scene addressed in Graham. See also Jones, 104 F.3d at 628. The assault occurred after Rogers had been told she could go and Morgan had followed her home, far from the scene of the traffic stop and separated in time from it.

The recent decision of the Supreme Court in County of Sacramento v. Lewis, 118 S.Ct. 1708, 1715-16, 1717-18 (1998), demonstrates that a constitutional claim need not be analyzed under Graham just because the incident began with a traffic stop and that the "shocks the conscience" test continues to have validity. In Lewis, parents sued to recover for deprivation of their son's substantive due process right to life after he was killed as a result of a police chase. The Court said the claim should be analyzed under the due process clause rather than the fourth amendment. Id. at 1715-16. It explained that the core of the substantive due process concept is "protection against arbitrary action" and against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." Id. at 1716. In a lengthy discussion of the fifty year history of the shocks the conscience test and the policy behind it, the Court explained why this is the appropriate test to apply to substantive due process claims and how the test serves to distinguish abusive executive acts amounting to constitutional violations from breaches of common law duties covered by tort law. Id. at 1717-18. Conduct that is "intended to injure in some way unjustifiable by any government interest" is likely to be conscience shocking. Id. at 1718.

The threshold question in a due process challenge to abusive conduct by a state actor is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Lewis, 118 S.Ct. at 1717 n.8. The evidence in this case supports the district court's conclusion that Rogers suffered a violation of her right to intimate bodily integrity that was conscience shocking. This case involves an egregious, nonconsensual entry into the body which was an exercise of power without any legitimate governmental objective. It therefore violated Rogers' substantive due process right. Morgan's rape was an intentional act that produced constitutional injury and that was an "arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice." Lewis, 118 S.Ct. at 1716 (quoting Hurtado v. California, 110 U.S. 516, 527 (1884)). The rape falls at the extreme end of the scale of egregious conduct by a state actor and was "unjustifiable by any government interest." Lewis,

-9-

118 S.Ct. at 1718. The district court did not err in analyzing the case under the due process clause or in its conclusion that the violation of Rogers' due process rights was shocking to the conscience.

**B**

Morgan contends that the evidence did not establish a due process violation because he did not use violence to commit the sexual assault. He cites portions of Rogers' trial testimony where she admitted that he told her she did not have to have sex with him, that she did not ask him to stop or physically resist his advances, that she took her own clothes off, and that he did not threaten or harm her. He also notes that the Internal Affairs Division of the Little Rock Police Department (LRPD) did not sustain her complaint and that the prosecuting attorney declined to bring criminal charges against him.

Rogers was able to establish a due process violation absent physical force because such violations can be based on mental coercion. See Leyra v. Denno, 347 U.S. 556, 558 (1954). Morgan's contention that no due process violation can be established on these facts therefore fails unless the district court's factual finding that the sex was nonconsensual was clear error. Fed. R. Civ. P. 52(a). The court found incredible Morgan's claim that the intercourse was consensual. He told several versions of what happened on the day of the rape, remained in his clothes throughout, and his excuse for following Rogers around her house (that he was afraid she had a weapon) was inconsistent with a claim of consensual sex. After reviewing the trial transcript and giving due weight to the fact that the trial court is in a superior position to evaluate the credibility of witnesses, see Bush v. Marshalltown Medical and Surgical Center, 123 F.3d 1130, 1134 (8th Cir. 1997), we conclude that the factual findings of the district court are not clearly erroneous.

## C

Morgan argues that the district court erred in finding that he was acting under color of state law. He contends that not towing Rogers' car when she did not have proof of insurance, going to her home, and then having sex with her were all substantial departures from his duties as a Little Rock police officer which means he was not acting under color of law, citing Heidemann v. Rother, 84 F.3d 1021 (8th Cir. 1996). An official acts under color of state law even if he "abuses the position given him by the State . . . while acting in his official capacity or while exercising his responsibilities pursuant to state law." West v. Atkins, 487 U.S. 42, 50 (1988). The issue depends on "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." Roe v. Humke, 128 F.3d 1213, 1216 (8th Cir. 1997) (quoting Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995)). There were facts produced to show that Morgan relied on his authority as a police officer to facilitate the assault. He stopped Rogers for a broken tail light, raised the prospect of towing her car when she did not have the insurance papers, and later after going to her home said that she owed him a favor in exchange for letting her go. He remained in uniform, and Rogers testified that she felt she had to cooperate with his demands because he was a police officer. Morgan thus abused his power while carrying out the official duties entrusted to him by the state, and the district court did not err in finding that he acted under color of state law.

## D

Morgan claims that he was entitled to qualified immunity, which protects an official when his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The court properly denied immunity, however, since Morgan's sexual assault violated the clearly established due process right to be

free of physical abuse by public officials, and a reasonable officer would have known of this right. See Lanier 117 S.Ct. at 1228 (sufficient for liability under § 1983 and 18 U.S.C. 242 that "'in the light of pre-existing law the unlawfulness [under the Constitution is] apparent'"(quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)); see also Doe v. Taylor Ind. Sch. Dist., 15 F.3d at 455.

## E

Morgan finally asserts that the $100,000 in damages awarded to Rogers was excessive because any harm to her did not rise to the level of Parrish v. Luckie, 963 F.2d 201 (8th Cir. 1992), which the district court relied on to determine the appropriate award. Compensatory damages are recoverable in § 1983 actions for injuries including "personal humiliation, and mental anguish and suffering." Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986) (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974)); see also Jackson v. Crews, 873 F.2d 1105, 1109 (8th Cir. 1989). We review damage awards for abuse of discretion and ask whether the award is arbitrary or excessive. See Doby v. Hickerson, 120 F.3d 111, 114 (8th Cir. 1997). The plaintiff, her family, her friends, and her expert witness all testified to the harmful impact the incident had on her, and the nature of the act and its context all contribute to the conclusion that the award was not arbitrary or excessive. The award was also proportionate to the type of harm and the amount given in similar cases. See Mathie v. Fries, 121 F.3d 808, 813-14 (2d Cir. 1997) (collecting cases and upholding $250,000 compensatory damage award for inmate raped by prison official).

## III

Rogers appeals the summary judgment dismissals. She claims that there are genuine issues of fact about whether the city had a policy of not sustaining complaints of physical abuse by police officers and whether such policy caused the violation of her

constitutional rights. In order to subject the city to § 1983 liability Rogers must show that the city had a "'policy or custom' of failing to act upon prior similar complaints of unconstitutional conduct, which caused the constitutional injury at issue." Andrews v. Fowler, 98 F.3d 1069, 1075 (8th Cir. 1996) (quoting Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978)). In support of her claim Rogers offered the deposition testimony of officer John Hall of the LRPD Internal Affairs Division who stated that a complaint would not be sustained without physical evidence or other witnesses to support the accusations. She also points to two LRPD documents which indicate that the department would accept an officer's statement as true unless the complaint was corroborated. She argues that this created an environment in which officers believed that they could violate citizens' constitutional rights with impunity, even by an act of rape, citing Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996), cert denied, 117 S.Ct. 1086 (1997).

We review the district court's summary judgment ruling de novo. See Andrews, 98 F.3d at 1074. If, viewing the facts in the light most favorable to the nonmoving party, the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see also Fed. R. Civ. P. 56(c).

Assuming for the purposes of summary judgment that the city had a policy of ruling citizen complaints "not sustained" when there was no supporting evidence besides the complainant's account, Rogers has failed to establish a case for § 1983 liability since such policy was not shown to have caused the constitutional violation. A § 1983 plaintiff must prove that the alleged policy "was the moving force behind the constitutional violation." Jane Doe A. v. Special Sch. Dist., 901 F.2d 642, 646 (8th Cir. 1990). Rogers has not made an adequate showing that a policy of believing the officer's word over the complainant's in the absence of other evidence led officers to believe that they could violate citizens' constitutional rights without fear of punishment.

-13-

The uncontested evidence shows that all allegations of police misconduct were investigated by the LRPD, and there was no pattern of acquiescence in the face of constitutional violations. Nor was there sufficient evidence to establish that the investigations were a "facade to cover the violent behavioral patterns of police officers." Beck, 89 F.3d at 974. Rogers' evidence fails as a matter of law to prove the essential element of causation, and her citation to Beck is of no assistance because that case only dealt with the sufficiency of the evidence to prove a policy and did not address causation. See Beck, 89 F.3d at 972 n.6.

A city may also be liable under § 1983 where there had been "a prior pattern of unconstitutional conduct that [was] so 'persistent and widespread' as to have the effect and force of law," and the pattern caused the alleged injury. Andrews, 98 F.3d at 1075 (quoting Monell, 436 U.S. at 691). A plaintiff must show "that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." Id. (quoting Parrish, 963 F.2d at 204). Rogers cites as evidence of the city's inadequate reaction an earlier incident where Morgan engaged in sexual intercourse with a fellow cadet while on duty and an unsustained claim by another cadet of sexual harassment. The undisputed evidence showed that the department investigated both incidents and suspended Morgan as a result of his engaging in intercourse with a fellow cadet while on duty. This response was sufficient as a matter of law to defeat a claim that the city responded inadequately to information about Morgan's prior misconduct.

Additionally, Rogers points to three Equal Employment Opportunity Commission sexual harassment complaints filed by female department members and a list of excessive force complaints as evidence that there was a city practice or policy not to follow up properly on such claims and to tolerate an atmosphere of sexual misconduct. There must also be some showing that the complaints had merit, however. See Handle v. City of Little Rock, 772 F. Supp. 434, 437 (E.D. Ark. 1991) (quoting Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987)). Two of the EEOC complaints were

dismissed, and a single claim is not enough to raise a genuine issue of fact about whether the city dealt inappropriately with sexual harassment by officers. Moreover, since Chief Caudell took office there has been only one other complaint of sexual abuse by an officer, and that complaint was investigated and resulted in the prosecution of the complainant for filing a false police report. The submitted evidence of sexual misconduct is insufficient to establish that the city was aware of a pattern of misconduct and responded inappropriately to it.

Rogers also challenges the dismissal of her claims against the chief and Morgan in their official capacities. Liability for city officials in their official capacities is another form of action against the city, and it requires the same showing that a policy or custom caused the alleged violation. See Monell, 436 U.S. at 690 n.55; Marchant v. City of Little Rock, 741 F.2d 201, 204 (8th Cir. 1984). As discussed earlier, the alleged policy was not shown to have caused the injury Rogers suffered, and therefore summary judgment was appropriate.

Finally, Rogers contends that the district court erred by dismissing her claim against the police chief in his individual capacity because there is an issue of fact about whether he was deliberately indifferent to Morgan's sexual misconduct. A city employee faces § 1983 liability in his individual capacity when he fails to act adequately on complaints of sexual abuse if he had notice of a pattern of unconstitutional conduct by subordinates and exhibited deliberate indifference to or tacit authorization of the conduct. See Bell v. Fowler, 99 F.3d 262, 269 (8th Cir. 1996); Wilson v. City of North Little Rock, 801 F. 2d 316, 322 (8th Cir 1986). Rogers cites the two incidents of sexual misconduct by Morgan with fellow cadets and asserts that the chief responded inadequately to them. Both allegations were investigated, and one resulted in Morgan's suspension for ten days and the other was not sustained because there were no witnesses. This response did not show a "reckless disregard for or deliberate indifference to" unconstitutional conduct by Morgan. Rubek v. Barnhart,

-15-

814 F.2d 1283, 1284 (8th Cir. 1987). The record also shows that the chief decided to terminate Morgan after an investigation into the rape of Rogers, but he resigned first.

## IV

Since we conclude that the evidence at trial supports the findings and conclusions of the district court and that Rogers did not make a sufficient showing against the city and the chief of police or Morgan in his official capacity, we affirm the final judgment in all respects.

LOKEN, Circuit Judge, concurring in part and dissenting in part.

I concur in Part III of the court's opinion, which affirms the dismissal of Vivian Rogers's claims against the City of Little Rock, Police Chief Caudell, and Officer Morgan in his official capacity. However, I respectfully dissent from Part II, which affirms the judgment in favor of Rogers on her substantive due process claim against Officer Morgan in his personal capacity.

As the court acknowledges, "the first inquiry in any § 1983 suit is to isolate the precise constitutional violation with which the defendant is charged." Graham v. Connor, 490 U.S. 386, 394 (1989). Officer Morgan stopped Ms. Rogers's car for a broken tail light, threatened to tow her car when she failed to produce proof of insurance, and then followed her home and went into her house in search of evidence of insurance. These rather routine police actions implicated the Fourth Amendment "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Thus, there can be no question that, if Ms. Rogers had filed § 1983 claims challenging any of these police actions, those claims would be analyzed exclusively under the Fourth Amendment.

-16-

Ms. Rogers alleges that Officer Morgan, while acting under color of law, raped her before leaving her home. She alleges that she was coerced into nonconsensual sex while still under Morgan's control and fearful of the consequences of failing to cooperate with a police officer. In Graham, the Supreme Court held "that *all* claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." 490 U.S. at 395. Although due process interests may be implicated by such excessive force, Fourth Amendment analysis was appropriate in Graham because "both provisions targeted the same sort of governmental conduct and, as a result, we chose the more explicit textual source of constitutional protection over the more generalized notion of substantive due process." Soldal v. Cook County, 506 U.S. 56, 70 (1992) (quotations omitted). Yet the district court, and now this court, reject Fourth Amendment analysis in this case, apparently because Officer Morgan's criminal misconduct does not look like a typical Fourth Amendment excessive force case. I disagree.

To recover under the Fourth Amendment, Rogers must first prove that the challenged conduct took place in the course of an arrest, investigatory stop, or seizure. The Fourth Amendment was not implicated in the recent case of County of Sacramento v. Lewis, 118 S. Ct. 1708 (1998), because there was no seizure, only pursuit that ended in a fatal car crash. Therefore, substantive due process was the only § 1983 claim available to the unsuccessful § 1983 plaintiff. Here, on the other hand, there was an initial traffic stop and seizure followed by continuing, allegedly coercive investigation at Ms. Rogers's home. The Fourth Amendment fits the setting and amply protects her constitutional rights. If she cannot prove that the rape was part of a Fourth Amendment seizure, for example, because Officer Morgan's police work ended before their sexual encounter began, then her substantive due process claim should fail as well. On the other hand, if the rape was part of a Fourth Amendment seizure, then Officer Morgan will surely be liable under the familiar Fourth Amendment reasonableness inquiry

-17-

articulated in <u>Winston v. Lee</u>, 470 U.S. 753, 759-63 (1985).  <u>See, e.g.</u>, <u>Mayard v. Hopwood</u>, 105 F.3d 1226, 1228 (8th Cir. 1997) (police beating a handcuffed and hobbled arrestee unreasonable).  In my view, there is nothing inappropriate or unusual in imposing virtually *per se* Fourth Amendment liability on police officers who misuse their power to arrest or otherwise seize a person by committing sexual assaults.

On the other hand, the very significant problem with the court's substantive due process analysis is that it has no definable limits.  The court says, "No degree of sexual assault by a police officer acting under color of law could ever be proper."  <u>Ante</u> at 8. In the abstract, I can agree.  But I do not agree that any such sexual assault by any government employee is a substantive due process violation.  As the various opinions in <u>Lewis</u> make clear, "shock the conscience" is a restrictive standard for defining the scope of substantive due process.  The Supreme Court has recently warned, "We must therefore exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the members of this Court."  <u>Washington v. Glucksberg</u>, 117 S. Ct. 2258, 2268 (1997) (citations omitted).  And the Court has "rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law."  <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 128 (1992).

The Supreme Court instructed us in <u>Graham</u> to avoid substantive due process analysis when the Fourth Amendment provides "the more explicit textual source of constitutional protection" for a § 1983 claim.  The district court violated that directive when it decided "this case is best analyzed pursuant to the due process clause."  <u>See</u> <u>Cole v. Bone</u>, 993 F.2d 1328, 1332 (8th Cir. 1993); <u>Robinson v. City of St. Charles</u>, 972 F.2d 974, 976 (8th Cir. 1992); <u>Foster v. Metropolitan Airports Comm'n</u>, 914 F.2d 1076, 1081 (8th Cir. 1990); <u>Roach v. City of Fredericktown</u>, 882 F.2d 294, 297 (8th Cir. 1989).  Accordingly, I would reverse the judgment of the district court and remand for an analysis of Vivian Rogers's claim under the Fourth Amendment.

A true copy.

Attest:

          CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.