# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3450

_____

| | | |
|---|---|---|
| Union Electric Company, a Missouri Corporation, | * | |
| | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Consolidation Coal Company, a | * | Eastern District of Missouri |
| Delaware Corporation; Consol, Inc., | * | |
| a Delaware Corporation; Consol | * | |
| Energy, Inc., a Delaware Corporation, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: April 21, 1999

Filed: August 27, 1999

_____

Before McMILLIAN, LOKEN and MURPHY, Circuit Judges.

_____


McMILLIAN, Circuit Judge.

Union Electric Co. (UE) appeals from a final judgment entered in the United States District Court[1] for the Eastern District of Missouri granting summary judgment in favor of Consolidation Coal Co. (CONSOL). See Union Electric Company v. Consolidation Coal Company, Case No. 4:96CV1881JCH (E.D. Mo. Aug. 31, 1998) ("Memorandum and Order"). For reversal, UE argues that the district court erred in finding that the terms of the gross inequities clause of the contract between it and CONSOL were clear and unambiguous and that the clause created no enforceable obligations on the parties. For the reasons discussed below, we affirm.

Jurisdiction in the district court was proper based upon 28 U.S.C. § 1332. Jurisdiction in the court of appeals was proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

BACKGROUND:

In 1966 UE and CONSOL entered into a long-term contract in which CONSOL agreed to supply coal to UE for use in production of electricity at a power plant in Labadie, Missouri. The contract was a "base price plus escalation" contract, in that the contract set a price per ton of coal in 1966 and contained provisions to adjust that price for changes in inflation and other factors. Most of these provisions related to specific production costs, such as labor or materials. Some of the provisions "passed through" external increases in production costs directly to the purchase price, while others contained equations for determining price increases in relation to changing production costs. The controversy in this case centers on a price adjustment provision referred to as the Gross Inequities Clause (GIC).

---

[1]The Honorable Jean C. Hamilton, Chief Judge for the United States District Court for the Eastern District of Missouri.

The GIC provided an additional means to address inequities caused by economic conditions not contemplated at the time of the contract. The GIC in the contract stated:

> Any gross inequity that may result from unusual economic conditions not contemplated by the parties at the time of the execution of this Agreement may and should be corrected by mutual agreement; provided, however, that nothing contained herein shall be construed as relieving any party from the continued performance of its obligations hereunder, notwithstanding the existence of a claim of inequity or the failure of the parties to reach an agreement with respect thereto. Each party hereto shall, in case of a claim of gross inequity, furnish the other party with whatever documentary evidence may be requested in effecting a settlement of such claim.

During the 1960s and 1970s CONSOL presented to UE several requests for increased payment, under both the price adjustment provisions and the GIC. UE granted the majority of these requests, and the price-per-ton UE paid to CONSOL under the contract was increased several times.

Appellant claims that in 1994, it realized that in the 1980s the conditions which prompted CONSOL's requests had reversed themselves, and since UE continued its higher payments, CONSOL benefitted from a substantial windfall. Appellant contends that as a result of this reversal of conditions, appellant over-paid CONSOL $169 million under the contract.

In early 1995, UE contacted CONSOL demanding a decrease in the price-per-ton for future shipments and that CONSOL reimburse UE for the over-payment. CONSOL indicated that it did not believe such action was possible under the contract. In late 1995 appellant made a formal GIC request to CONSOL, which CONSOL rejected because it concluded that UE had not suffered any gross inequity or indeed any

financial hardship as a result of the supposed overpayment and that CONSOL's improved production capabilities were irrelevant to UE's GIC claim.

UE then initiated this suit in federal district court alleging that CONSOL breached the contract and seeking recovery of the over-payment. The district court granted CONSOL's motion for summary judgment, finding that CONSOL's failure to accept UE's GIC claims did not constitute a breach of contract because the language of the GIC was clear and unambiguous and created no enforceable contract rights under which CONSOL was bound to accept UE's GIC application. See Memorandum and Order at 7-9. The district court also rejected UE's claims that CONSOL acted in bad faith in rejecting UE's GIC request as well as UE's unjust enrichment claims against CONSOL. See id. at 11-16. This appeal followed.

DISCUSSION

We review decisions to grant summary judgment de novo, applying the same standard as the district court and viewing the facts in the light most favorable to the non-moving party. See Hutchins v. International Brotherhood of Teamsters, 177 F.3d 1076, 1080 (8th Cir. 1999) (citing Breading v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999)). Summary judgment is proper when there is no genuine issue of material fact, and the moving party would be entitled to judgment as a matter of law. See id.

A

UE argues that the GIC required UE and CONSOL to come to a mutual agreement regarding all GIC requests and that, as such, the GIC is an enforceable contract right. UE contends that CONSOL breached the contract when it rejected UE's GIC claim. We disagree.

-4-

In order to succeed on its claims of breach of contract under Missouri law, UE must allege "(a) the making and existence of a valid and enforceable contract between the plaintiff and defendant, (b) the right of the plaintiff and obligation of the defendant thereunder, (c) a violation thereof by defendant, and (d) damages resulting to the plaintiff from the breach." Gilomen v. Southwest Mo. Truck Center, 737 S.W.2d 499, 500-01 (Mo. Ct. App. 1987). Appellant's argument fails because the plain language of the GIC demonstrates that it did not create an enforceable contract.

First, the unambiguous terms of the GIC establish no more than an agreement between the parties to attempt to come to an agreement about GIC requests. The operative portion of the GIC--that GIC claims *"may and should* be corrected by mutual agreement"--contains purely precatory language and no terms that suggest that such agreement is mandatory. (Emphasis provided.) The parties could easily have made the GIC obligatory by using mandatory language, such as "must and shall" rather than "may and should." In fact, in other portions of the contract and the GIC itself, the parties did use mandatory language to demonstrate that the terms were obligatory. For example, the GIC states that the party raising a GIC claim "shall" provide supporting documentation. In addition, the GIC provides no mechanism to resolve disagreements or to enforce a GIC claim, which further undermines UE's argument that the GIC is obligatory. See, e.g., Georgia Power Co. v. Cimarron Coal Corp., 526 F.2d 101, 105-106 (6th Cir. 1975) (holding that a gross inequities clause was binding and subject to arbitration since the parties had agreed in the contract to submit all disputes to arbitration.) Furthermore, the GIC expressly forbids either party to seek enforcement of its GIC claim by stopping performance of the contract, because it states that the parties "shall" continue performance regardless of GIC claims or a failure to agree on a GIC resolution.

In our opinion, the plain language of the GIC does not create any enforceable contract right as it is merely an agreement between the parties to make good faith

efforts to work out GIC disputes between themselves.[2]  As such, under the facts presented, there is no information in the contract that would guide us on how we should enforce such a contract term.  See, e.g., Beech Aircraft Corp. v. Ross, 155 F.2d 615, 617(10th Cir. 1946)(holding that to be enforceable, a contract which provides for revisions of the contract price during the term of the contract by agreement of the parties must contain sufficient information for to enable the court to ascertain the price).  Thus, CONSOL's rejection of UE's GIC claim did not constitute a breach of contract.

B

Appellant attempts to overcome the clearly precatory language of the GIC by introducing extrinsic evidence of the parties' dealings to demonstrate that they intended the GIC to be obligatory.  Specifically, UE argues that evidence that both parties treated the GIC as obligatory during the period in which CONSOL made GIC claims and that CONSOL threatened UE with litigation on two occasions if UE rejected CONSOL's GIC claims demonstrates that the GIC should be considered more than an agreement to attempt to agree.  However, we are not at liberty to consider this extrinsic evidence.

Missouri contract law strictly prohibits the use of extrinsic evidence to interpret or cast doubt on a contract that is clear and unambiguous.  See Royal Banks v. Fridkin, 819 S.W.2d 359, 361(Mo. 1991) (Fridkin) (en banc) ("The parol evidence rule bars extrinsic evidence, unless an integrated contract is ambiguous."); accord Planet Productions, Inc. v. Shank, 119 F.3d 729, 732 (8th Cir. 1997) (Planet Productions)

---

[2]The obligation to act in good faith, unlike the agreement to agree on GIC claims, is an enforceable contract right.  However, UE provided no evidence that CONSOL acted in bad faith when it rejected UE's GIC claim.  See Memorandum and Order at 11-15.  As such, its claim on this ground fails as well.

(applying Missouri law). Moreover, the "determination as to whether a [contract] is ambiguous is a question of law to be decided by the court." Fridkin, 819 SW.2d at 361 (citing Jim Carlson Construction, Inc. v. Bailey, 769 S.W.2d 480, 482 (Mo.App.1989)). Under Missouri law, contract terms are ambiguous only if they are reasonably susceptible to more than one interpretation so that reasonable persons may honestly disagree over the terms' meaning. See Planet Productions, 119 F.3d at 731-32; Property Tax Research v. Falstaff Brewing Corp., 708 F.2d 1333, 1336-37 (8th Cir. 1983).

As we noted above, the plain language of the GIC created only an unenforceable agreement between the parties to attempt to agree about the resolution of GIC complaints. The terms of the GIC are clear and unambiguous. As such, the extrinsic evidence of the parties' intentions and past dealings offered by UE to prove the GIC was obligatory is barred under Missouri law by the parole evidence rule.

CONCLUSION

Because the terms of the GIC are clear and unambiguous and did not create an enforceable contract right, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-