**ROYAL BANKS OF MISSOURI, f/k/a Royal Bank of Mid–County, and f/k/a Citizens Bank of University City, Appellant,**

v.

**Harold L. FRIDKIN, Respondent.**

No. 73793.

Supreme Court of Missouri,
En Banc.

Nov. 19, 1991.

Rehearing Denied Dec. 17, 1991.

---

**1.** As the principal opinion notes, the statutory factors applicable in the present case were those in effect in 1987.

Terrence F. Moffitt, St. Louis and James M. Tobin, Kansas City, for appellant.

Jim Tom Reid, Kansas City, for respondent.

BENTON, Judge.

Royal Banks of Missouri[1] ("bank") appeals from an adverse judgment on its petition to enforce a guaranty by Respondent Harold L. Fridkin ("Fridkin").

In the fall of 1984 Respondent Fridkin was a leading backer of Kenneth Rothman, then in the final days of his bid for governor. Respondent agreed to raise $50,-000.00, which he accomplished by obtaining guaranties from several supporters totaling $50,000.00. Respondent personally agreed to guarantee $10,000.00, by a written "Guaranty" providing in part:

> FOR VALUE RECEIVED, The undersigned (Guarantor) hereby absolutely and unconditionally guarantees to Citizens Bank of University City, a Missouri Corp. (Bank), the prompt payment when due, in accordance with its terms, of the indebtedness evidenced by that promissory

---

1. Formerly Royal Bank of Mid–County and pri-
or to that Citizens Bank of University City.

note of *FRIENDS OF KEN ROTHMAN* (Borrower) dated *Oct. 29, 1984*, in the principal sum of *Ten Thousand and 00/ 100* dollars *($10,000.00)*, or any renewals or extensions thereof.

The borrower and date were typed on the guaranty form as were the names and addresses of seven individual guarantors. Respondent Fridkin's guaranty reflected his signature, with the remaining six signature lines blank. In the spaces for the principal sum of the promissory note, Respondent Fridkin wrote the words and figures "Ten thousand and 00/100" and "$10,-000.00".

Other guaranties are not at issue in this case, though this case is an "example case" for liability on the other guaranties. The guarantors, not wanting joint and several liability in the amount of $50,000.00, instructed Respondent to limit their individual liability.

The main transaction was structured in the form of a promissory note signed by Geri Rothman on behalf of "Friends of Ken Rothman", a committee[2] promoting Rothman's candidacy for governor. The note, in the principal amount of $50,000.00, dated October 29, 1984, was due on April 29, 1985, or upon earlier demand.

The guaranties were delivered to the bank on October 30, 1984, the day following execution of the promissory note. The bank paid the money in two installments— $25,000.00 on October 29 and $25,000.00 on November 5. Respondent Fridkin apparently signed his guaranty without first seeing the promissory note.

On April 3, 1985, Respondent sent $11,-752.32—by 24 separate checks—to be applied against the Friends of Ken Rothman "loan", with directions to pay interest to date and apply the balance on a pro-rata basis "amongst the guaranteed notes." Respondent's cover letter also suggested extending the "note" for a six-month period. On May 9, 1985, Respondent Fridkin sent the bank checks totalling $125.00 to be applied toward interest for the "loan".

Thereafter, on December 26, 1985, a check for $5,000.00 was sent to the bank with directions to apply $4,033.12 to pay the entire balance of another guaranty, and the balance to interest on the other "notes".

Clearly, Respondent handled the transaction for all guarantors. He filled in the amounts on each individual guaranty and directed the bank how to apply the payments toward the balance on the various guaranties. Bank notices of the individual balances, while maintained in the names of the individual guarantors, were mailed in care of Respondent Fridkin.

On April 14, 1986, the bank made demand on Respondent for the balance due on his guaranty.

Based on the evidence admitted at the hearing, the associate circuit judge found that there was no evidence of any underlying obligation of the Friends of Ken Rothman on a note in the exact amount of $10,000.00; therefore Respondent was not liable on the guaranty.

The trial court admitted into evidence only the Fridkin guaranty and the April demand letter. All other exhibits and Respondent's testimony were rejected by the trial court, but preserved through an offer of proof.

## I.

The rules of construction applicable to a guaranty are the same as applied to other contracts. *Industrial Bank & Trust Co. v. Hesselberg,* 195 S.W.2d 470, 476 (Mo.1946); *Standard Meat Co. v. Taco Kid of Springfield, Inc.,* 554 S.W.2d 592, 595 (Mo.App.1977). The parol evidence rule bars extrinsic evidence, unless an integrated contract is ambiguous. *Commerce Trust Co. v. Watts,* 360 Mo. 971, 231 S.W.2d 817, 820 (Mo.1950). A determination as to whether a guaranty is ambiguous is a question of law to be decided by the court. *Jim Carlson Construction, Inc. v. Bailey,* 769 S.W.2d 480, 482 (Mo.App.1989).

---

**2.** Organized pursuant to Missouri's Campaign Finance Disclosure Law, § 130.011 *et seq.,*

RSMo Supp.1979.

■ Ambiguities in written instruments may be of two kinds: (1) patent, arising upon the face of the documents, and (2) latent. *Busch & Latta Painting Corp. v. State Highway Commission*, 597 S.W.2d 189, 197 (Mo.App.1980). A "latent ambiguity" arises where a writing on its face appears clear and unambiguous, but some collateral matter makes the meaning uncertain. *Boswell v. Steel Haulers, Inc.*, 670 S.W.2d 906, 912 (Mo.App.1984).

■ Where ambiguity exists—latent or patent—the cardinal principle is to determine the intent of the parties. *Id.* at 913. In order to determine the intent of the parties a court will consider the entire contract, subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties. *Busch & Latta Painting Corp. v. State Highway Commission, supra* at 198.

■ Neither party argues that the guaranty is ambiguous on its face; clearly it is not. However, the bank submits that a latent ambiguity exists. A latent ambiguity is not apparent on the face of the writing and therefore, must be developed by extrinsic evidence. *Prestigiacamo v. American Equitable Assurance Co.*, 240 Mo.App. 839, 221 S.W.2d 217, 221 (1949). Evidence of a promissory note that fits the description in the guaranty in all respects except for principal amount, coupled with the fact that a $10,000.00 note did not exist, is a collateral matter that renders the meaning of the guaranty uncertain. Once it became apparent that there was no $10,-000.00 note but instead only a $50,000.00 note, a latent ambiguity existed and consideration of external matters was necessary to determine the true intent of the parties. *Boswell v. Steel Haulers, Inc., supra* at 913.

■ Exclusion of all evidence relating to the transaction—with the exception of the guaranty and the demand letter—obscures the true intent of the parties. The intent of the parties can only be discerned if the court construes all the documents that were executed as part of the same transaction. *Tri–State Gas Co. v. Kansas City Southern Railway Co.*, 484 S.W.2d 252, 254 (Mo.1972). When all the circumstances surrounding execution of the guaranty and the promissory note are considered, it yields only one conclusion as to the true intent of the parties. As Respondent Fridkin candidly stated at trial, he expected to be obligated to pay $10,000.00 if the Friends of Ken Rothman failed to pay its note. Respondent Fridkin and the other guarantors did not want joint and several liability for the entire $50,000.00, but instead desired to limit their individual liability. Respondent accomplished his intent to limit his liability by inserting the amount he agreed to guarantee, *i.e.*, $10,000.00.

■ Respondent cites general rules of law relating to guaranties. A guarantor's undertaking may not be extended by implication beyond the strict letter of the obligation. *Industrial Bank & Trust Co. v. Hesselberg*, 195 S.W.2d 470, 476 (Mo. 1946); *Boatmen's Bank of Jefferson Co. v. Community Interiors, Inc.*, 721 S.W.2d 72, 79 (Mo.App.1986); *Eberly v. Lehmer*, 48 S.W.2d 151, 153 (Mo.App.1932). The liability of a guarantor is to be strictly construed according to the terms of the guaranty agreement. *Id.* This Court's holding in no way extends Respondent's strict undertaking. The bank may not attempt to extend Respondent's legal obligation to the entire $50,000.00 but may only enforce the obligation Respondent clearly assumed: to repay up to $10,000.00 of the $50,000.00 loaned to Friends of Ken Rothman.

■ Respondent contends that this case should be analyzed in terms of "mistake" rather than ambiguity. *Hardin v. Ray*, 404 S.W.2d 764 (Mo.App.1966). However, *Hardin* is distinguishable since the alleged misstatement in the contract completely altered the plaintiff's underlying obligation, unlike the instant case.

■ A material alteration in or departure from the contract of guaranty without the guarantor's consent will dis-

charge him. *Citizens Bank of Smithville v. Lair*, 687 S.W.2d 268, 270 (Mo.App.1985). A "material alteration" exists if it changes the liability. *Id.* In the instant case, Respondent intended to be obligated to the extent of $10,000.00. Whether Friends of Ken Rothman had one $50,000.00 promissory note or several promissory notes totalling $50,000.00 does not change Respondent's liability.

■ Respondent argues that he might have been prejudiced by the priority of allocation of payments among the guarantors. This argument has no merit because Respondent himself has determined the priority and allocation of payments.

A Texas case is most apposite. In *Bullock v. Kehoe*, 678 S.W.2d 558 (Tex.App. 1984), the appellants each guaranteed $50,-000.00 of a note for $312,564.85. The guaranty recited the principal amount of the note and described it as payable June 9, *1978*. The note, however, stated that the principal and unpaid interest was payable June 9, *1977*. This variance in date was proffered by the guarantors as a material variance discharging their obligation. The Texas Court of Appeals rejected the guarantors' argument, finding that they "needed to show conclusively that the difference in the due date of the note either caused them injury or enhanced their risk of injury." *Id.* at 559. So too, in this case, the difference in the amount of the actual note did not cause Respondent injury.

Considering all the admissible evidence in accordance with Rule 73.01(c)(3), there is no factual dispute. Pursuant to Rule 84.14, the bank is entitled to judgment as a matter of law for the unpaid balance of Respondent Fridkin's guaranty, plus interest.

## II.

■ Respondent Fridkin raised, as an alternative theory, that the $50,000.00 promissory note was not a valid obligation of Friends of Ken Rothman since it was not executed by the committee's treasurer, Harold Boraz. The trial judge specifically did not decide this issue.

There is no dispute that the Friends of Ken Rothman committee accepted $50,-000.00 from the bank. The committee listed the obligation in its required campaign finance reports. Based on these facts, the claim that no obligation exists as to Friends of Ken Rothman fails. This Court in *Linwood State Bank v. Lientz*, 413 S.W.2d 248, 253 (Mo.1967), examined an analogous issue whether a guarantor was liable when money was borrowed, contrary to the by-laws, without authority of the board of directors. In *Linwood* this Court rejected the guarantor's attempt to assert lack of authority as a defense to the borrowing and cited the law as stated in *Farmers & Merchants Bank v. Burns & Hood Motor Co.*, 295 S.W.2d 199, 202 (Mo.App.1956), as controlling:

> Although the instant note was concededly executed by the president of defendant company, in the absence of express authority from the board of directors, and therefore contrary to the provisions of the applicable by-law, we must nevertheless hold that the note constitutes a binding obligation. This follows because the law is well settled that where, as here, a corporation with knowledge of the act has ratified it, or has accepted the consideration of the note, it will be as much bound as if the note had been originally executed in exact conformity with the provisions of its by-laws.

Likewise the guarantor is foreclosed from avoiding liability since it has no better defense than the primary obligors. *Mercantile Trust Co. v. Carp*, 648 S.W.2d 920, 925 (Mo.App.1983). The fact that Friends of Ken Rothman is a political committee rather than a corporation does not distinguish the reasoning of *Linwood*. Respondent Fridkin's argument is not an alternative basis for affirming the trial court.

The judgment of the trial court is reversed, and this case remanded to enter judgment for the bank for the unpaid balance of Respondent's guaranty, plus applicable interest.

RENDLEN, COVINGTON, HOLSTEIN and BLACKMAR, JJ., and AHRENS and SMITH, Special Judges, concur.

ROBERTSON, C.J., not sitting.

THOMAS, J., not participating because not a member of the Court when case was submitted.