**JAMIESON–CHIPPEWA INVESTMENT COMPANY, INC., Appellant,**

v.

**Dennis McCLINTOCK, et al., Respondents.**

No. 74773.

Missouri Court of Appeals, Eastern District, Division Two.

June 8, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 19, 1999.

Ryan S. Shaughnessy, Herzog, Crebs & McGhee, St. Louis, for appellant.

Thomas J. Palazzolo, Husch & Eppenberger, St. Louis, for respondent.

### RICHARD B. TEITELMAN, Judge.

Jamieson–Chippewa Investment Company, Inc. ("Landlord") appeals the grant of summary judgment entered in favor of Dennis and Tereasa McClintock ("Guarantors") in Landlord's action against Guarantors on their alleged personal guaranty of a lease. The issue is whether the guaranty of a lease, absent some express language in either the guaranty or underlying lease agreement indicating the guaranty was intended to be continuing beyond the original lease term, continues when the lease is renewed. We find as a matter of law that under such circumstances the guarantor cannot be held liable, and therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1988 Landlord entered into a five-year commercial lease with TDM Pharmacy, Inc. ("Lessee") for certain premises located in Ellisville, Missouri, on which Lessee intended to operate a small drug store. Dennis McClintock and Tereasa McClintock ran the pharmacy business, and Dennis McClintock was Lessee's corporate President. The lease granted Lessee three additional five-year renewal options.

In addition to being executed by the corporate Lessee, the lease was also executed by Dennis McClintock and Tereasa McClintock individually, as guarantors. It was stated on the signature page of the lease, inter alia, "Guarantors: Dennis N. McClintock and Tereasa D. McClintock." Both Dennis and Tereasa signed by the word "Guarantors." With respect to the guaranty agreement itself, there were no words of guarantee contained in the agreement other than that single word on the signature page of the lease, "Guarantors." Nor does the lease refer to the guaranty agreement. There is no language contained in the lease stating that the guaranty is a continuing guaranty.

In August of 1993 Dennis McClintock, acting in his capacity as President of the corporate Lessee, sent Landlord a letter exercising Lessee's option to renew the lease for one additional five-year term.[1] Subsequently in 1996, when Lessee's drug store business failed, Lessee vacated the premises and defaulted on the lease. Thereafter Landlord filed a two-count petition, Count I stating a claim against Lessee for breach of lease and Count II against Guarantors on their guaranty agreement. In response to Landlord's suit Guarantors filed a motion for summary judgment as to Count II, contending that as a matter of law the guaranty they signed was not a continuing guaranty and thus did not guarantee any rent payments by Lessee beyond the original five year lease term.

As part of its response to Guarantors' motion for summary judgment Landlord submitted the affidavit of Shawn Jarrett, which indicated it was the original Landlord's intent that the guaranty would apply

1. The letter stated, in full: "Dear Sir: According to the terms of our Lease Agreement, we are hereby exercising our option to renew our Lease at 16425 Village Plaza View Drive, Ellisville, Missouri for one additional five (5) year term. This is the first five (5) year option of three (3) originally agreed to five (5) year options. All other terms and conditions of the original Agreement remain the same.

Please sign one copy of this letter of notification and return for our files. Thank you." The letter was from TDM Pharmacy, Inc. and was signed by Mr. McClintock, with the signature line clearly indicating that his signature was in his capacity as corporate President of TDM. The term "Agreement" as used in the letter refers to the lease and not the guaranty.

to both the initial five-year lease term and any subsequent five-year renewal terms. Landlord also submitted the affidavit of Ken Goessling, who attested that it was customary in the commercial real estate business in the metropolitan St. Louis area for lessors to require the principals of a corporate tenant to execute the lease in their corporate representative capacity, and then execute it again in their individual capacity, in order to secure all payments due under the terms of a commercial lease and any extension thereof. In support of their motion for summary judgment, Guarantors did not supply any affidavits controverting the factual allegations set forth in Landlord's affidavits, but instead relied simply on the lease, the letter of intent to exercise option to renew lease, which were provided as exhibits, and their supporting memorandum of law.

In June of 1998, after a hearing and argument held on Guarantors' motion for summary judgment, the trial court entered an order granting the motion. The court later amended its order and judgment, certifying that it was final for purposes of appeal and that there was no just reason for delay. This appeal followed.

## DISCUSSION

■ Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no dispute, a right to judgment as a matter of law. Rule 74.04. We review the record in the light most favorable to the party against whom summary judgment was granted. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially *de novo*, however, and the criteria on appeal for testing the propriety of summary judgment are the same as those which should be employed by the trial court initially. *National Super Markets, Inc. v. KMSK, Inc.*, 940 S.W.2d 47, 49 (Mo.App. E.D. 1997). The propriety of summary judgment is purely an issue of law. *Id.*

On appeal, Landlord argues that the trial court erred in granting summary judgment for Guarantors because a guaranty that is not expressly limited should be construed as a continuing guaranty, and that the lease guaranty executed by Guarantors was not expressly limited to the initial lease term and thus was not discharged by Lessee's exercise of the option to renew for an additional five-year term. Alternatively, Landlord argues, the court erred because the agreement in question was ambiguous as to whether the parties intended the guaranty to apply to any lease renewal term beyond the initial five-year term., thus presenting a genuine issue of material fact which precludes summary judgment.

■ A guarantor agrees to become secondarily liable for the obligation of a debtor in the event the debtor does not perform the primary obligation. *Patterson v. Katt*, 791 S.W.2d 466, 468 (Mo.App. E.D.1990); 38 Am Jur.2d, *Guaranty*, § 19, at 1017 (1968). A guaranty is thus a species of contract. It is a collateral agreement for another's undertaking, and is an independent contract which imposes responsibilities different from those imposed in the agreement to which it is collateral. *Standard Meat Co. v. Taco Kid of Springfield, Inc.*, 554 S.W.2d 592, 595 (Mo.App. S.D.1977). A "continuing" guaranty is one that contemplates guaranteeing a series of possible transactions between the debtor and creditor, rather than only a single such transaction. *Ulreich v. Kreutz*, 876 S.W.2d 726, 729 (Mo.App. E.D.1994). A guaranty agreement may be construed together with any contemporaneously executed agreements dealing with the same subject matter, as an aid in ascertaining the intention of the parties. *Id.* at 728. However, this does not mean that those agreements constitute a single contract, and the liability of the guarantor remains primarily dependent on the guaranty agreement itself. *Id.; Taco Kid*, 554 S.W.2d at 595. It is the guaranty contract itself which defines the obligations and

rights of both the guarantor and guarantee. *Taco Kid*, 554 S.W.2d at 595; *New Medico Associates, Inc. v. Snadon*, 855 S.W.2d 489, 491 (Mo.App. S.D.1993).

■ Generally, the rules of construction applicable to a guaranty are the same as those applied to other contracts. *Royal Banks of Missouri v. Fridkin*, 819 S.W.2d 359, 361 (Mo. banc 1991). However, a guarantor's obligation is to be strictly construed, and may not be extended by implication beyond its "strict letter." *Id.* at 362. A contract of guaranty must be construed "strictly according to its terms, and no stretching or extension of its terms can be indulged in order to hold the guarantor liable on his guaranty." *Zoglin v. Layland*, 328 S.W.2d 718, 721 (Mo.App.1959). A guarantor is entitled to a strict construction of his obligation in his favor; he is not obliged beyond the precise letter of his obligation; and nothing may be implied against him. *Citizens Bank of Smithville v. Lair*, 687 S.W.2d 268, 269–70 (Mo.App. W.D.1985). See also *National Super Markets, Inc. v. KMSK, Inc.*, 940 S.W.2d at 49.

In this case, no words anywhere in the guaranty or the underlying lease agreement expressly indicate that Guarantors are obliged to guarantee any rent payments of Lessee beyond the initial five-year lease term. Despite this fact, and despite the well-established principle in Missouri that a guarantor's obligation is to be strictly construed in his favor and according to its literal terms, Landlord argues on appeal that the guaranty was ambiguous in regard to whether it was intended to apply to subsequent lease renewal terms, thereby requiring parol evidence to establish the parties' intent and making summary judgment inappropriate. We disagree.

Initially, we recognize that there is a close split of authority among other jurisdictions on the question of whether a lease guaranty not expressly identified as continuing will be deemed to carry over and apply to a renewal term when the lessee exercises an option to renew, and that courts have found this to be a somewhat vexing question. See generally, Annotation: *Liability Of Lessee's Guarantor Or Surety Beyond The Original Period Fixed By Lease*, 10 A.L.R.3d 582, 584 (1966, and 1998 Supplement); 49 Am Jur.2d, *Landlord And Tenant*, §§ 818–819 (1995); 38 Am Jur.2d, *Guaranty*, § 24 (1968). We believe the better reasoned view is represented by those cases holding that a lease guaranty for a specific term does not carry over and apply to a subsequent renewal term, without some language in either the guaranty or lease agreement expressly so indicating.[2] We find this view to be in accord with Missouri's recognized principle that a guarantor's obligation is to be strictly construed. *Zoglin v. Layland*, 328 S.W.2d at 721.

■ It is true, as Landlord points out, that parol evidence is often admissible to help explain or construe the terms of an ambiguous contract. *CIT Group/Sales Financing, Inc. v. Lark*, 906 S.W.2d 865, 868 (Mo.App. E.D.1995). It is true as well that even guaranty contracts have occasionally been held by Missouri courts to be ambiguous in certain aspects, such that introduction of extrinsic evidence to aid in their construction has been found to be necessary. See *Royal Banks of Missouri v. Fridkin*, 819 S.W.2d at 362; *Headrick Outdoor, Inc. v. Middendorf*, 907 S.W.2d 297, 300 (Mo.App. W.D.1995); *United Siding Supply, Inc. v. Residential Imp. Services, Inc.*, 854 S.W.2d 464, 468 (Mo.App. W.D.1993);[3] *Zoglin v. Layland*, 328

---

2. See 10 A.L.R.3d 582, *supra*, § 3(b); *Westcor Co. Ltd. v. Pickering*, 164 Ariz. 521, 794 P.2d 154, 157 (1990); *Yearling Properties, Inc. v. Tedder*, 53 Ohio App.3d 52, 557 N.E.2d 1231, 1233 (1988); *Zero Food Storage v. Udell*, 163 So.2d 303, 304–05 (Fla.App.1964).

3. We note, however, that *United Siding Supply* has only limited precedential value insofar as setting forth *Missouri* law concerning guaranties, since that case was decided primarily (although not exclusively) on the basis of guaranty principles under *Oklahoma* law, which may not construe a guarantor's obli-

S.W.2d at 721. Indeed, guaranty agreements are subject to parol evidence in essentially the same manner as contracts generally. See Annotation: 33 A.L.R.2d 960, *Parol Evidence Rule As Applied To Written Guaranty*, (1954 and Later Case Service). By the very same token, however, it is also true that the rule *prohibits* parol evidence offered to vary, alter, add to or subtract from the terms of a contract when the contract is *not* ambiguous.[4] *Headrick Outdoor, Inc. v. Middendorf*, 907 S.W.2d at 300; *CIT Group/Sales Financing, Inc. v. Lark*, 906 S.W.2d at 868; *Young Dental Mfg. Co. v. Engineered Products, Inc.*, 838 S.W.2d 154, 157 (Mo. App. E.D.1992).

Whether a contract is ambiguous is a question of law to be determined by the court. *Royal Banks of Missouri v. Fridkin*, 819 S.W.2d at 361; *Headrick Outdoor, Inc. v. Middendorf*, 907 S.W.2d at 300; *CIT Group/Sales Financing, Inc. v. Lark*, 906 S.W.2d at 868; *Young Dental Mfg. Co. v. Engineered Products, Inc.*, 838 S.W.2d at 155. A contract is ambiguous only if its terms are reasonably open to more than one meaning. *CIT Group/Sales Financing, Inc. v. Lark*, 906 S.W.2d at 868. A contract is not ambiguous merely because the parties disagree over its meaning. *Id.* Any "ambiguity" in a guaranty contract should arise in the first instance from the guaranty agreement itself, and neither the court nor the parties will be permitted to create an ambiguity where none exists. *Taco Kid*, 554 S.W.2d at 595. See also *Rieger v. Royal Brewing Co.*, 106 Mo.App. 513, 80 S.W. 969 (1904), where it was held as a matter of law that the lease guaranty there in question was not ambiguous regarding the period of time it was intended to apply, and hence not subject to parol explanation.

Considering the above-stated principles together with the circumstances of this case, we reject Landlord's contention that the lease guaranty is legally "ambiguous" on the question of whether it applies to a subsequent renewal term merely because it is silent as to that question. To hold otherwise would be fundamentally inconsistent with Missouri's rule that a guarantor is entitled to a strict construction of his obligation in his favor. Neither the guaranty or the underlying lease agreement expressly indicates whether the guaranty was intended to continue to apply in the event of a lease renewal. The written guaranty itself consists only of the single word "Guarantors" next to the signature line at the end of the lease. Under these circumstances, the "strict letter" of the guaranty contract can reasonably be defined to encompass only that which is *necessarily* required by the use of that single word in conjunction with the lease agreement: namely, the guarantee of rent payments during the initial five-year lease term only. To hold that the guaranty was "ambiguous" in this regard and could be construed with the aid of parol evidence to continue beyond the initial five-year lease term period would, in fact, be to violate the principle that a guarantor's undertaking "may not be extended by implication beyond the strict letter of the obligation." *Royal Banks of Missouri v. Fridkin*, 819 S.W.2d at 362; *National Super Markets, Inc. v. KMSK, Inc.*, 940 S.W.2d at 49.

### CONCLUSION

We hold as a matter of law that the language of a lease guaranty, or else the underlying lease agreement to which it is collateral, must expressly indicate the intention of the parties that the guaranty continue in order to hold the guarantor liable. Absent some contract language

gation as strictly in his favor as does Missouri. See *United Siding Supply*, at 466–67.

4. The parol evidence rule is based on two fundamental premises: (1) that a written document is more reliable and accurate than fallible human memory, and (2) that varying written agreements by extrinsic oral evidence opens the door to perjury. *CIT Group/Sales Financing, Inc. v. Lark*, 906 S.W.2d at 868.

clearly expressing such an intent, the guaranty must be construed as limited to the original lease term and will not extend to a renewal term. Accordingly, the judgment of the trial court is affirmed.

JAMES R. DOWD, P.J., and LAWRENCE G. CRAHAN, J., concur.