Tricia A. DERGES and Dan Derges, Plaintiffs–Respondents,

v.

Kurt HELLWEG, Cheryl Hellweg, John Ghirardelli, Colleen Ghirardelli, David R. Zapatka, Joan M. Zapatka, Michael S. Clarke, and Krystyna Clarke, Defendants–Appellants.

No. 25602.

Missouri Court of Appeals, Southern District, Division Two.

March 3, 2004.

John R. Lightner, Mark J. Millsap, J. Matthew Miller, Baird, Lightner, Millsap & Kollar, P.C., Springfield, for Appellants.

Bruce McCurry, Chaney & McCurry, LLP, Springfield, for Respondents.

JOHN E. PARRISH, Judge.

Tricia A. Derges and Dan Derges, husband and wife, (plaintiffs) brought an action against Kurt and Cheryl Hellweg, husband and wife; John Ghirardelli and Colleen Ghirardelli, husband and wife; David R. Zapatka and Joan M. Zapatka, husband and wife; and Michael S. Clarke and Krystyna Clarke, husband and wife, (defendants). Plaintiffs requested the trial court to grant "declaratory judgment declaring, ordering and allocating" the respective obligations of the parties to the action for payment of obligations due by reason of certain promissory notes given by FGT Properties, LLC, to Metropolitan National Bank. Plaintiffs further sought judgment taxing costs and attorney fees incurred by plaintiffs to defendants.

Summary Judgment was entered "declaring and ordering Plaintiffs and Defendants to pay the indebtedness to Metropolitan National Bank and/or interest payments required thereon, as follows: Mr. and Mrs. Derges—6.51%; Mr. and Mrs. Hellweg—23.3725%; Mr. and Mrs. Ghirardelli—23.3725%; Mr. and Mrs. Zapatka—23.3725%; Mr. and Mrs. Clark [sic]—23.3725%." This court reverses and remands.

*Organization, Capitalization, and Initial Financing of Business Organizations*

Plaintiff Tricia Derges and defendants Kurt Hellweg, John Ghirardelli, David Zapatka, and Michael S. Clarke formed two business entities, FGT Properties, LLC, (the LLC) and FGT Enterprises, Inc., (the corporation) in order to own real estate and operate a restaurant. The LLC is a Missouri limited liability company. It owns real estate on which the building used to operate Fried Green Tomatoes restaurant is situate, together with equipment and other assets used to operate the restaurant. The corporation operated the restaurant. Ms. Derges, Mr. Hellweg, Mr. Ghirardelli, Mr. Zapatka, and Mr. Clarke were equal members of the LLC when it

was formed. They were equal shareholders in the corporation.[1] The LLC was initially funded with capital contributions in the amount of $45,200 from each of its five members.

The operating agreement of the LLC provided that the ordinary and usual decisions concerning the LLC's business affairs "shall be made by the managing members." It declared the initial managing members to be Tricia A. Derges, Kurt Hellweg, John Ghirardelli, Dave Zapatka, and Michael S. Clarke. Article IX of the operating agreement identified the initial contributions each of its members was required to make. It declared:

> No interest shall accrue on any capital contribution and no member shall have the right to withdraw or be repaid any capital contribution except as provided in this Operating Agreement.... The allocation of profit and loss shall be separate from management rights of a member such that, until such time as a member pays in his full contribution under this Article, such member shall not be entitled to receive any share of the profit or loss of the company and shall participate only in management of same.

The LLC borrowed $2,119,000 from Metropolitan National Bank. The loans were evidenced by two promissory notes of which the LLC was maker. The five members of the LLC and their respective spouses signed and delivered personal guaranties of the LLC's obligations to the bank.

*Additional Capital Contributions to the LLC and Maintenance of Capital Accounts*

Article IX of the operating agreement of the LLC provided as follows regarding additional capital contributions and maintenance of capital accounts:

> **2. Additional Contributions.** Managing members may determine from time to time that additional contributions are needed to enable the Company to conduct its business. Upon making such a determination, the managing members shall notify all members in writing at least ten (10) business days prior to the date on which such contribution is due. Such notice shall set forth the amount of additional contribution needed, the purpose for which the contribution is needed, and the date by which members should contribute. Acceptance of such notice for additional contributions shall be signed by the member to whom such notice is addressed. In the event any one or more members do not make their additional contribution, the other members shall be given the opportunity to make the contributions.

> . . .

> **4. Maintenance of Capital Accounts.** The Company shall establish and maintain capital accounts for each member. Each member's capital account shall be increased by the amount of any money actually contributed by the member to the capital of the Company, the fair market value of any property contributed, and the member's share of net profits and of any separately allocated items of income or gain. Each member's capital account shall be decreased by the amount of any money distributed to the member by the Company, the fair market value of any prop-

---

**1.** The record regarding capitalization of the corporation reflects the five shareholders were equal shareholders and that "[i]n May of 2000, an additional $50,000.00 each was con-

tributed to the corporation by the five people ... for a total of $250,000.00." Whether these contributions were for the purchase of stock or were loans is not disclosed.

erty distributed to the member, and the member's share of net losses and of any separately allocated items of deduction or loss.

After an additional $100,000 operating capital had been sought from the shareholders by the corporation, Ms. Derges was advised by Kurt Hellweg that future "cash calls" would be sought through the LLC.[2] From July 2000 to December 2001, seven requests were made to the members of the LLC for additional capital contributions. Pursuant to the notices requesting additional capital contributions, the four members, other than Ms. Derges, contributed $19,000 each in July 2000; $15,000 each in September 2000; $10,000 each in November 2000; $45,000 each in February 2001; $18,000 each in May 2001; $7,000 each in August 2001; and $3,000 each in December 2001, totaling $117,000 additional contributions for each of the four members of the LLC other than Ms. Derges. Ms. Derges did not make any additional capital contributions to the LLC.

Following the payments of the additional cash contributions by the four members of the LLC other than Ms. Derges, the balance in the capital account of the LLC of each of those four members was $162,200. The balance in Ms. Derges' capital account was $45,200. The calculation of percentages of ownership of the LLC was 23.3725% ($162,200 contributed by each of the four divided by total capital contributed to the LLC of $694,000) each for Mr. Hellweg, Mr. Ghirardelli, Mr. Zapatka, and Mr. Clarke. The calculation of the percentage of ownership of Ms. Derges was 6.512% ($45,200 contributed by Ms.

Derges divided by total capital contributed to the LLC of $694,000).[3]

### The Issues on Appeal [4]

Defendants present three points on appeal. As this court perceives those points:

(1) Point I asserts that the trial court erred in granting summary judgment for plaintiffs because there was no factual basis for certain conclusions of law on which the trial court relied in entering judgment.

(2) Point II contends the trial court erred in granting summary judgment for plaintiffs because it erroneously relied on actions taken in accordance with the operating agreement of the LLC to declare rights and obligations established independently by a personal guaranty the parties executed to secure obligations to Metropolitan National Bank; that the personal guaranty required the parties who executed that document to share guaranty obligations equally.

(3) Point III argues that the trial court erred in granting summary judgment for plaintiffs in that the judgment failed to recognize the difference Missouri law establishes for determining distribution of assets to members of an LLC and members of an LLC's rights to participate in the LLC's management.

When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. *Zafft v. Eli Lilly,* 676 S.W.2d 241, 244 (Mo.banc 1984); *Cooper v. Finke,* 376 S.W.2d 225, 228 (Mo.1964).

---

**2.** Ms. Derges did not contribute to the request for additional operating capital for the corporation. The other four shareholders contributed an additional $20,000 each.

**3.** The calculation of percentages of members' ownership was rounded to total 100%.

**4.** Certain motions filed by the parties were taken with the case. All pending motions are denied.

Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Cherry v. City of Hayti Heights,* 563 S.W.2d 72, 75 (Mo. banc 1978); *Dietrich v. Pulitzer Publishing Company,* 422 S.W.2d 330, 333 (Mo.1968). We accord the non-movant the benefit of all reasonable inferences from the record. *Martin v. City of Washington,* 848 S.W.2d 487, 489 (Mo. banc 1993); *Madden v. C & K Barbecue Carryout, Inc.,* 758 S.W.2d 59, 61 (Mo. banc 1988).

Our review is essentially *de novo.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *E.O. Dorsch Electric Co. v. Plaza Const. Co.,* 413 S.W.2d 167, 169 (Mo.1967). The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *Elliott v. Harris,* 423 S.W.2d 831, 834 (Mo.banc 1968); *Swink v. Swink,* 367 S.W.2d 575, 578 (Mo.1963). *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

■ Point II is determinative of defendants' appeal. Defendants contend in Point II that the trial court erred in granting summary judgment by declaring the parties' rights and obligations under the guaranty agreement they executed based on terms of the operating agreement of the LLC, a document independent and separate from the guaranty agreement. This court agrees.

Plaintiffs' petition for declaratory judgment sought allocation between the parties to the lawsuit of "the lawful amount of contribution as among Plaintiffs and Defendants for payment of the promissory notes of [the LLC] to Metropolitan Bank." The petition asserts that "Plaintiffs and Defendants are joint guarantors of two promissory notes payable to Metropolitan Bank from [the LLC], one note being in the principal amount of $1,819,000.00 and the other note being in the principal amount of $300,000.00." Defendants' answer admits the allegation.

In other allegations, plaintiffs assert the existence of the LLC's operating agreement and identify terms included in that agreement. Defendants' answer to plaintiffs' petition acknowledges the operating agreement and its terms, but denies the relevance of the operating agreement with respect to the issues presented by the petition for declaratory judgment.

The summary judgment declared the parties' pro rata responsibilities to make payments pursuant to requirements of the guaranty agreement to be the same as the relative percentages of the LLC capital account balances, viz., "Mr. and Mrs. Derges—6.51%; Mr. and Mrs. Hellweg 23.3725%; Mr. and Mrs. Ghirardelli—23.3725%; Mr. and Mrs. Zapatka—23.3725%; Mr. and Mrs. Clark [sic]—23.3725%." [5]

Whatever guaranty agreement the parties executed is not before this court. A review of plaintiffs' motion for summary judgment does not disclose a copy of any guaranty agreement attached as an exhibit to the motion or a reference to a copy of

---

5. *See* n. 3, *supra,* and the text to which it applies regarding the respective capital account balances of the members of the LLC.

the agreement elsewhere in the trial court's file. The briefs filed in this court do not reference a copy of a guaranty agreement as being part of the record on appeal, nor has this court's perusal of the record on appeal revealed a copy of the document. Thus, the content of any guaranty agreement is not known to this court and was apparently not known to the trial court, although the agreement would govern the respective rights of the parties insofar as they may be obligated to assure payment of the LLC's indebtedness to Metropolitan National Bank.

■■■ A guaranty agreement is a species of a contract. *Jamieson–Chippewa Inv. Co. v. McClintock,* 996 S.W.2d 84, 87 (Mo.App.1999). "It is a collateral agreement for another's undertaking, and is an independent contract which imposes responsibilities different from those imposed in the agreement to which it is collateral." *Id.* The guaranty agreement is what defines the obligations and rights of both the guarantor and guarantee. *Id.* at 87–88.

Plaintiffs sought declaration of the respective rights of the parties to this action in their capacities as co-guarantors of obligations the LLC owed Metropolitan National Bank. The obligations of the guarantors cannot be ascertained absent reference to the agreement by which they were established. The operating agreement of the LLC does not establish the obligations of the parties to it with respect to a guaranty agreement executed separately and independently from the operating agreement (and which included additional parties to those who were members of the LLC and, therefore, not parties to its operating agreement). De-

fendants' allegation of error in Point II that the trial court erroneously relied on facts relative to the operating agreement is well taken.[6]

The summary judgment will be reversed and the case remanded for further proceedings. Cases the trial court may find instructive in construing whatever guaranty agreement may have been executed by the parties to this action, in addition to those cited, *supra,* include *Hammons v. Ehney,* 924 S.W.2d 843, 853 (Mo. banc 1996) (when two or more persons bind themselves as co-guarantors, each, as between themselves, is required to bear a ratable proportion of the amount for which they are liable under the contract of guaranty); and *Betz v. Fagan,* 962 S.W.2d 432, 436 (Mo.App.1998) (absent proof to the contrary, co-obligors are presumed to receive equal benefit from a guaranty obligation and are obliged to contribute equally to its payment).

Point II is granted as to defendants' claim that the trial court erroneously relied on the LLC's operating agreement rather than the guaranty agreement in declaring the obligations of the parties. This court has not considered the assertion in Point II that the parties are to share their guarantor obligations equally in that the guaranty agreement applicable to that determination was not before the trial court and is not before this court on appeal. In that Point II is determinative, Points I and III are not addressed.

The summary judgment was not supported by the record. The judgment is reversed and the case remanded.

---

6. There is nothing in the record before this court that indicates the operating agreement of the LLC was executed contemporaneously with the guaranty agreement or that the two agreements dealt with the same subject matter so as to permit them to be construed together to give meaning to the terms of the guaranty document. *See Jamieson–Chippewa,* 996 S.W.2d at 87. *See also Mercantile Bank, N.A. v. Loy,* 77 S.W.3d 93, 95 (Mo.App.2002).

SHRUM and BATES, JJ., concur.

RAHMEYER, C.J., recused.