

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **BREEZE INVESTMENTS, LLC,** | **WD84588** |
| **Respondent,** | **OPINION FILED:** |
| **v.** | **April 26, 2022** |
| **MICHAEL ROCKWELL AND MR FLOORS, LLC,** | |
| **Appellants.** | |

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Kyndra James Stockdale, Judge**

**Before Division Three:
Anthony Rex Gabbert, P.J., Lisa White Hardwick and Thomas N. Chapman, JJ.**

Michael Rockwell ("Rockwell") appeals from a judgment of the Jackson County Circuit Court that found in favor of Breeze Investments, LLC ("Breeze") on Breeze's breach of contract claims against MR Floors, LLC ("MR Floors")[1] and Rockwell. Breeze's claim against Rockwell was contingent on a personal guaranty that Rockwell executed in 2014 and its applicability to a subsequent lease agreement executed in 2017 by Breeze and MR Floors. On appeal, Rockwell asserts that the trial court misapplied the law in determining that the personal guaranty Rockwell

---

[1] At various points in the written agreements between Breeze and MR Floors, MR Floors is referred to as "Mr. Floors." In this appeal, we refer to the entity as "MR Floors" consistent with the trial court's judgment, the parties' references to MR Floors in the underlying proceedings, and the briefs filed on appeal.

executed in 2014 continued as a personal guaranty of the obligations of MR Floors under the subsequent lease agreement in that neither the personal guaranty nor the lease agreement clearly indicated an intent that the guaranty would continue beyond the 24 months of the original lease. The judgment is reversed as against Rockwell, affirmed as against MR Floors, and the case is remanded for entry of judgment consistent with this opinion.[2]

## Background

On July 15, 2014, Breeze and MR Floors entered into a two-year Commercial Industrial Lease ("Original Lease") for a property located at 200-D NE Woodbury Drive in Grain Valley, Missouri. The Original Lease contained 40 paragraphs. Paragraph five of the Original Lease provided:

> **5. SECURITY DEPOSIT**. Concurrently with tenant's signing of this Lease and Personal Guaranty, Tenant shall deliver to Landlord $1,327.00 as security for the performance by Tenant of every covenant and condition of this Lease (the "Security Deposit"). Said Security Deposit may be co-mingled with other funds of Landlord and shall bear no interest. If Tenant shall default with respect to any covenant or condition of this Lease, including, but not limited to the payment of rent, Landlord may apply the whole or any part of such Security Deposit to the payment of any sum in default or any sum which Landlord may be required to spend by reason of Tenant's damage or default. If any portion of the Security Deposit is so applied, Tenant, upon demand by Landlord, shall deposit cash with Landlord in an amount sufficient to restore the Security deposit to its original amount. Should Tenant comply with all of the covenants and conditions of this Lease, the Security Deposit or any balance thereof shall be returned to Tenant promptly after expiration of the term thereof.

The first sentence of this provision contained the only reference in the Original Lease to a personal guaranty.

---

[2] No challenge is raised in this appeal to the judgment as against MR Floors; thus, the judgment is affirmed as against MR Floors.

On or about July 23, 2014, (shortly after execution of the Original Lease) Michael Rockwell executed a Personal Guaranty, the first paragraph of which provided:

> Michael Rockwell (hereinafter referred to as "Guarantor"), as further consideration for this that certain Lease Agreement between Breeze Investments LLC, as "Lessor", and Mr. Floors, LLC as "Lessee," dated July ____, 2014 (the "Agreement"), unconditionally and jointly and severally guarantee(s) the Twenty Four (24) months of performance and observance of all the covenants, conditions, and agreements herein provided to be performed and observed by Lessee for the Twenty Four (24) months of the formal lease agreement. Guarantor expressly agrees that the validity of this Guaranty and the obligations of the Guarantor hereunder for the Twenty Four (24) months of the lease agreement shall in no way be terminated, affected, or impaired by reason of the granting by Lessor of any indulgences to Lessee or by reason of the assertion by Lessor against Lessee of any of the rights or remedies reserved to Lessor pursuant to the provisions of the Agreement or by the relief of Lessee from any of Lessee's obligations under the Agreement by operation of law or otherwise, including, but without limitation, the rejections of the Agreement in connection with proceedings under the bankruptcy laws now or hereafter enacted; Guarantor hereby waiving all suretyship defenses.

The final paragraph of the guaranty stated:

> No subletting shall operate to extinguish or diminish the liability of the Guarantor under this Guaranty; and wherever reference is made to the liability of Lessee named within the Agreement, such reference shall be deemed likewise to refer to the Guarantor.

At the expiration of the Original Lease (July 18, 2016), MR Floors continued to occupy the lease property, paying monthly rent for an additional nine months. On April 9, 2017, Breeze and MR Floors, LLC executed a document entitled "2nd Amendment to Commercial Industrial Lease Dated July 10, 2014" ("Amended Lease"). Under the Amended Lease, MR Floors would occupy a different property at 108A NE Woodbury Drive at a different monthly rate for a term of three years beginning May 1, 2017. The opening sentence of the Amended Lease states: "This is an amendment, reinstatement and extension of the original lease executed the 10th day of July,

2014 by Breeze Investments LLC as the Lessor and Mr. Floors LLC the Lessee."[3]  The document then described the leased premises, the amount of monthly rent and duration of the lease, and a provision regarding an option to purchase.  Finally, the last paragraph of the Amended Lease stated: "All remaining terms and conditions to remain in effect."

On May 20, 2020, Breeze filed a two-count petition in the Circuit Court of Jackson County.  Count I asserted a breach of contract claim against MR Floors for unpaid rent, its attorney fees and costs.  Count II sought to recover the same amounts from Rockwell on the grounds that the personal guaranty rendered Rockwell personally liable for the obligations of MR Floors.

A trial was held on April 23, 2021, during which the trial court heard testimony from Bruce Casey (a member of Breeze) and from Rockwell   The trial court also received as exhibits the Original Lease, the Amended Lease, and the personal guaranty.  At the close of Breeze's evidence, Rockwell moved the court to find in favor of Rockwell on Count II of Breeze's petition on the grounds that the personal guaranty, by its terms, was limited to 24 months and contained no language indicating that it would apply to any subsequent agreements.  Rockwell's motion was denied.  At the close of all evidence, Rockwell again argued that the personal guaranty did not extend beyond the 24 months of the Original Lease.  Breeze argued that the language in the Amended Lease that "[a]ll remaining terms and conditions [were] to remain in effect" was a clear reference to both the Original Lease and the personal guaranty.  The trial court took the matter under advisement.

---

[3] The opening sentence of the Original Lease began: "THIS LEASE is made as of July 10, 2014[.]"  At the end of the document, the lease was signed by the parties and dated July 15, 2014.

The trial court thereafter issued its judgment. On Count I, the trial court found in favor of Breeze and against MR Floors in the amount of $30,576.00 for eight months of unpaid rent from September of 2019 through April of 2020. The trial court further granted Breeze attorney fees in the amount of $3,182.20 against MR Floors. With respect to the personal guaranty, the trial court determined that "[t]he Personal Guaranty signed by Defendant Michael Rockwell continued to serve as his personal guarantee for the obligations of MR Floors, LLC as set forth in the Second Amended Lease." Thus, on Count II, the trial court determined that Rockwell was jointly and severally liable for unpaid rent in the amount of $30,576.00. The trial court further found Rockwell jointly and severally liable for attorney fees in the amount of $3,182.20.

Rockwell now appeals to this court.

## Standard of Review

"On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "While we defer to the circuit court's factual findings, the court's legal conclusions and application of law to fact are reviewed *de novo*." *Robb v. Bond Purchase, L.L.C.*, 580 S.W.3d 70, 77 (Mo. App. W.D. 2019) (citing *Zweig v. Metro. St. Louis Sewer Dist.*, 412 S.W.3d 223, 231 (Mo. banc 2013)). "The interpretation of a contract presents a question of law subject to our *de novo* review." *Id.*

## Analysis

In his sole point on appeal, Rockwell argues that the trial court misapplied the law in determining that the personal guaranty he signed was operative with respect to the Amended Lease. Relying on *Jamieson-Chippewa Inv. Co., Inc. v. McClintock*, 996 S.W.2d 84 (Mo. App.

5

E.D. 1999), Rockwell contends that, in the absence of language clearly expressing the intent that a guaranty is to continue beyond its terms, a guaranty for a specific term does not apply to a subsequent renewal term. In particular, Rockwell contends that neither the Original Lease, the Amended Lease, nor the guaranty clearly expressed the intention of the parties that the guaranty would extend beyond the 24 months stated in the guaranty.

A guaranty is an agreement in which a guarantor agrees to assume liability for the obligation of an obligor in the event of non-performance by the obligor. *Jamieson-Chippewa*, 996 S.W.2d at 87. A guaranty "is a collateral agreement for another's undertaking, and is an independent contract which imposes responsibilities different from those imposed in the agreement to which it is collateral." *Id.* "A 'continuing' guaranty is one that contemplates guaranteeing a series of possible transactions between the debtor and creditor, rather than only a single such transaction." *Id.*

"The rules of construction applicable to a guaranty are the same as applied to other contracts." *Grand Inv. Corp. v. Connaughton, Boyd & Kenter, P.C.*, 119 S.W.3d 101, 115 (Mo. App. W.D. 2003) (quoting *Royal Banks of Mo. v. Fridkin*, 819 S.W.2d 359, 361 (Mo. banc 1991)). "The terms of a guaranty are to be understood in their plain and ordinary sense, when read in light of the surrounding circumstances and the object intended to be accomplished." *Id.* (quoting *Nat'l Super Mkt., Inc. v. KMSK, Inc.*, 940 S.W.2d 47, 49 (Mo. App. E.D. 1997)). "A guaranty may be construed together with any contemporaneously executed agreements dealing with the same subject matter as an aid in ascertaining the intention of the parties." *Id.*

"However, this does not mean that those agreements constitute a single contract, and the liability of the guarantor remains primarily dependent on the guaranty agreement itself." *Id.* (quoting *Jamieson-Chippewa*, 996 S.W.2d at 87). "[T]he guarantor's liability 'is to be strictly

6

construed according to the terms of the guaranty agreement' in the guarantor's favor and 'may not be extended by implication beyond the strict letter of the obligation.'" *Id.* (quoting *Fridkin*, 819 S.W.2d at 362).

In *Jamieson-Chippewa*, upon which Rockwell primarily relies, the Eastern District of our Court determined that the placement of the word "Guarantor" by the signature line of a five-year commercial lease was insufficient to establish that the guarantors who signed the lease individually (in addition to the corporate lessee) would be liable for a subsequent renewal term after the corporate lessee exercised its option to renew the lease for an additional five-year term via letter stating that the terms and conditions of the original lease agreement were to remain the same. *Jamieson-Chippewa*, 996 S.W.2d at 86 & n.1. The *Jamieson-Chippewa* Court held:

> We hold as a matter of law that the language of a lease guaranty, or else the underlying lease agreement to which it is collateral, must expressly indicate the intention of the parties that the guaranty continue in order to hold the guarantor liable. Absent some contract language clearly expressing such an intent, the guaranty must be construed as limited to the original lease term and will not extend to a renewal term.

*Id.* at 89-90.

Breeze acknowledges the holding in *Jamieson-Chippewa*, but argues that *Grand Investment* is a more appropriate case to guide our analysis. Breeze argues further that the language of the guaranty, the Original Lease, and Amended Lease provides a clear expression of an intent to extend the guaranty to the Amended Lease.

In *Grand Investment*, our Court determined that the language of the lease and guaranty agreements at issue clearly expressed an intent to extend the guaranty beyond the original five-year lease term to a subsequent renewal period. *Grand Investment*, 119 S.W.3d at 117. In *Grand Investment*, the guaranty agreements at issue provided that the two guarantors "unconditionally

guarantee[d]" the terms and conditions of the lease for "the full term of the Lease or until the termination thereof according to its terms, notwithstanding any modification or alteration of said Lease[.]" *Id.* The guaranties further stated: "no modification, compromise, indulgence, or alteration of the Lease shall in any manner release or discharge the undersigned and the undersigned does hereby consent thereto." *Id.* The guaranties further stated: "the terms and provisions of the Guaranty Agreement shall remain in full force and effect until the Tenant or the undersigned shall have fully and satisfactorily discharged all of its or their obligations to Landlord." *Id.* The guaranties further stated "that the giving of the guaranty was a material inducement to the landlord to enter the lease." *Id.* at 105. The lease at issue in *Grand Investment* provided: "[w]ithout said guarantees, Landlord would not enter into this Lease Agreement." *Id.* at 115. The lease further provided that the guaranty agreements were attached and made part of the lease. *Id.* The lease further provided an option to extend the lease "upon the same terms and conditions" as those specified in the lease. *Id.* The Court determined that one of those conditions was that the lease be personally guaranteed by the two guarantors. *Id.* at 117. Based on all of the abovementioned language, the court in *Grand Investment* found that the language of the guaranty agreements and the lease clearly expressed an intent for the liability of the guarantors to extend beyond the initial five-year lease term. *Id.* In sum, *Grand Investment* did not modify the holding in *Jamieson-Chippewa*. Rather, it reaffirmed that the language of the guaranty and lease must clearly express an intent that the liability of a guarantor extend to a subsequent renewal term, and found such a clear expression in the language of the guaranties and lease in that case. *Id.*

In this matter, we find no language in the guaranty or the Original Lease entered in 2014 which clearly expresses an intent that Rockwell's personal liability be continued to the Amended

8

Lease entered in 2017. *See Jamieson-Chippewa*, 996 S.W.2d at 89-90. Accordingly, the trial court misapplied the law in determining that Rockwell's personal liability extended to the Amended Lease.

Because "the liability of the guarantor remains primarily dependent on the guaranty agreement itself[,]" *Grand Investment*, 119 S.W.3d at 115 (quoting *Jamieson-Chippewa*, 996 S.W.2d at 87), the logical starting point in determining the liability of a guarantor is the guaranty agreement itself. In this matter, the guaranty agreement expressly limited its applicability to the 24 months of the Original Lease. Under the terms of the guaranty, Rockwell agreed to

> unconditionally and jointly and severally guarantee[] the Twenty Four (24) months of performance and observance of all the covenants, conditions, and agreements herein provided to be performed and observed by Lessee for the Twenty Four (24) months of performance and observance of all the covenants, conditions, and agreements herein provided to be performed and observed by Lessee for the Twenty Four (24) months of the formal lease agreement. . . .

The language of the guaranty makes clear that Rockwell guaranteed MR Floors' performance for the 24 months of the Original Lease. The language of the guaranty does not in any way indicate that Rockwell guaranteed the performance of MR Floors for any other period of time or guaranteed the performance of MR Floors for any other transaction. Unlike the guaranty agreement in *Grand Investment*, Rockwell's guaranty did not leave the duration of the guaranty indefinite. The language of the guaranty provides no indication that it is a continuing guaranty or that Rockwell's liability would extend beyond the 24 months repeatedly expressed in the guaranty as a limit on the guaranty's applicability. Thus, if the guaranty itself were our only consideration, then it would be clear that the guaranty did not extend to the renewal term.

Although both *Jamieson-Chippewa* and *Grand Investment* stand for the proposition that a guarantor's liability is primarily determined from the language of the guaranty itself, *id.*, both

9

cases also stand for the proposition that language clearly expressing that a guaranty continues for a subsequent renewal term may be found in either the guaranty or the lease agreement to which it is collateral. *See id.* at 117 (quoting *Jamieson-Chippewa*, 996 S.W.2d at 89-90). In this matter, the lease agreement to which Rockwell's guaranty was collateral contained precisely one reference to a personal guaranty. Paragraph five of the Original Lease began: "**5. SECURITY DEPOSIT**. Concurrently with tenant's signing of this Lease and Personal Guaranty, Tenant shall deliver to Landlord $1,327.00 as security for the performance by Tenant of every covenant and condition of this Lease (the "Security Deposit")." We find that this language does not clearly express an intent that Rockwell's guaranty was to continue beyond the 24 months of the Original Lease. Accordingly, "the guaranty must be construed as limited to the original lease term and will not extend to a renewal term." *See Jamieson-Chippewa*, 996 S.W.2d at 89-90.

Breeze argues that the language in paragraph five of the Original Lease made the personal guaranty a condition of the lease, such that, when the Amended Lease stated "[a]ll remaining terms and conditions to remain in effect[,]" this language incorporated the personal guaranty into the Amended Lease. We disagree. Although the language of paragraph five of the Original Lease indicates that the parties had contemplated that a personal guaranty would be signed around the time of the lease, this language largely refers to the timing of the delivery of the security deposit. We find this language is insufficient to make the guaranty agreement a term or condition of the Original Lease, and that this language is insufficient to constitute a clear expression that Rockwell's personal guaranty extend beyond the 24 months expressly stated in the guaranty agreement.

Likewise, the Amended Lease does not refer to the guaranty or its continuance with clear language. Rather, it refers to the Original Lease: "This is an amendment, reinstatement and

10

extension of the original lease executed the 10th day of July, 2014[.]" The Original Lease was a separate contract from the personal guaranty. *Jamieson-Chippewa*, 996 S.W.2d at 87. Thus, when the Amended Lease stated that "[a]ll remaining terms and conditions" were to remain in effect, it was referring to the terms and conditions of the Original Lease (to which it expressly referred) and was not clearly referring to the terms of the personal guaranty so as to constitute a clear expression that the guaranty continued to the amended lease.[4]

In Missouri, a guarantor's liability "may not be extended by implication beyond the strict letter of the obligation." *Grand Investment*, 119 S.W.3d at 115 (quoting *Fridkin*, 819 S.W.2d at 362). Rather, there must be a clear expression of the parties' intent that a personal guaranty is to continue in order to hold the guarantor liable for a subsequent renewal term. *Jamieson-Chippewa*, 996 S.W.2d at 89-90. In this matter we find no such clear expression in the guaranty, the Original Lease, or the Amended Lease. Accordingly, the trial court erred in determining that Rockwell's personal guaranty continued to make him liable for the obligations of MR Floors under the Amended Lease. Rockwell's point on appeal is granted.

### Breeze's Motion for Attorney's Fees on Appeal

Prior to submission of this case, Breeze filed a motion for attorney's fees on appeal based on language contained in the Original Lease. That motion was taken with the case. Having

---

[4] Moreover, the Amended Lease was not executed by Rockwell in his individual capacity. Although not argued by Rockwell in this appeal, we further note, *ex gratia*, that the Amended Lease executed by Breeze and MR Floors was not simply a renewal but was a lease for a different property and for a different monthly rate than the Original Lease. "A material alteration in, or departure from the contract of guaranty without the guarantor's consent will discharge him." *Citizens Bank of Smithville v. Lair*, 687 S.W.2d 268, 270 (Mo. App. W.D. 1985). "If the change enlarges or lessens the liability, it is material and vitiates the contract." *Id.* In this matter, the monthly rate of the rental property in the Amended Lease was $3,822 per month, nearly three times greater than the monthly rate of the rental property in the Original Lease ($1,327 per month).

found against Breeze in this appeal, we find that Breeze is not entitled to its attorney fees on appeal. Breeze's motion for attorney fees on appeal is denied.

## Conclusion

The judgment is reversed as against Rockwell, affirmed as against MR Floors, and the case is remanded to the trial court for entry of judgment in favor of Rockwell on Count II of Breeze's petition.

_____
Thomas N. Chapman, Judge

All concur.